## Marshall Field et al. v. Stuart W. French.

1. LIMITATIONS — As to Additional Counts. —Where the original counts of a declaration state no cause of action, and there is a re-statement by additional counts, such additional counts can not stand as against a plea of the statute of limitations, in cases where they are filed after the statutory period has expired.

2. NEGLIGENCE— Contractor and Third Persons.—A person who puts

Field v. French.

a passenger elevator in a building occupied by a merchant, for the accommodation of his customers, owes a duty to the merchant, so far as the construction of the elevator is concerned. but not to the customers.

3.  JUDGMENTS—*When Erroneous as to All Defendants.*—A judgment erroneous as to one defendant is erroneous as to all.

4.  PERSONAL INJURIES—*The Result of Hidden Defects, Question of Fact.*—Whether an injury is the result of a hidden defect in machinery of an elevator, and could not have been discovered by the exercise of the highest degree of care, and whether the operators of such elevator did all that human care, vigilance and foresight could reasonably do, under the circumstances, to guard against accidents, are questions of fact for the jury.

5.  INSTRUCTIONS—*As to Joint Liability Where No Joint Action is Shown.*—Where there is no evidence showing that one of several joint defendants is liable under the declaration, an instruction which allows a verdict on the theory of joint operation, is erroneous.

6.  SAME—*Shifting the Burden of Proof—Prima Facie Case.*—The plaintiff's right to recover must be confined to the grounds stated in his declaration, and an instruction which requires him to make out a *prima facie* case only, and then requires the defendant to meet all possible cases which would entitle the plaintiff to recover whether he alleges or proves them, is not the law.

7.  BURDEN OF PROOF—*The General Rule.*—The general rule is that when the plaintiff makes affirmative allegations of negligence, and the defendants plead the general issue. the burden is on the plaintiff all through the case to prove the specific negligence alleged, by a preponderance of the evidence, and he can not recover if the defendants' evidence is such as to evenly balance his own.

8.  WORDS AND PHRASES—*Prima Facie Case and Burden of Proof.*— All that is meant by the phrase " the plaintiff has made a *prima facie* case" is, that there is a necessity of evidence to answer, or it will prevail; but the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue, and this burden remains throughout the trial.

9.  CARRIERS OF PASSENGERS—*Persons Operating Elevators Are.*— Parties operating elevators in buildings for raising and lowering persons from one floor to another are carriers of passengers, and the same rules applicable to other carriers of passengers are applicable to them.

10.  SAME—*Degree of Care to be Exercised by.*—As such common carriers they must exercise the highest degree of human care, vigilance and foresight which is reasonable under the circumstances and in view of the character of the mode of conveyance adopted, reasonably to guard against accidents, etc.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendants. Heard in this

court at the October term, 1898. Reversed and remanded. Mr. Justice SEARS dissenting. Opinion filed January 26, 1899.

## STATEMENT OF CASE.

Marshall Field was the owner of certain real estate at Wabash avenue and Washington street, Chicago, and a ten story new building thereon, and made a contract with the Crane Elevator Company to construct therein thirteen elevators for the carriage of passengers, and two freight elevators, which contract had been substantially if not entirely completed, when French, the appellee, was injured by the falling of one of the passenger elevators, December 16, 1893.

Marshall Field & Co., as copartners, composed of all the appellants except the Elevator Company, were lessees of the building and premises, and occupied and used the building as a retail dry goods store at and before the time of appellee's injury.

The original declaration, which was filed September 6, 1894, is in two counts. The first count charges, in substance, that plaintiff was a customer at the store of defendants other than the Elevator Company, and while a passenger on one of their elevators, operated by the defendants other than the Elevator Company, and being carried from one of the upper stories down to the first floor of the building, while exercising due care for his own safety, was injured by the negligence of said defendants in using and operating said elevator and permitting the same to be used and operated while it was in an unsafe and unfit condition to be used for the purpose of carrying passengers, and alleging that the stand-pipe of the elevator, by means of which the car of the elevator was raised, lowered and operated, burst, and by reason thereof the car in which plaintiff was being carried dropped with great violence to the bottom of the elevator shaft.

The second count alleges, in substance, that Marshall Field owned the building, and had leased the same to *defendants other than the Elevator Company*, to carry on their business of a retail dry goods store, which defendants

were in possession of for said purpose; that Field had prior thereto made a contract with the elevator company to build and place in the store an elevator with car to be used in connection with the building, to carry passengers, customers of the store, from one floor to another; that the elevator company had completed, or partially completed, the elevator and car, but it had not been accepted by the inspector of elevators connected with the building department of the city of Chicago, in pursuance of the laws and ordinances of the city, nor by Field, and that it was the duty of said defendants, and each of them, not to use said elevator or car for carrying of passengers, customers of said store, when passing from one floor of said building to another, until said elevator or car had been duly and properly accepted by the said building department of the city of Chicago and the defendant Marshall Field; but that on the 16th of December, 1893, said defendants, before said elevator had been duly and properly accepted as aforesaid, were using and operating the same in said building for the purpose of carrying passengers, customers of said store, and while the plaintiff was a customer of said store and without any knowledge or notice of the condition of said elevator or of above facts, the defendants other than the Crane Elevator Company received and took plaintiff into the car of said elevator, to be safely carried from the upper to the first floor, and while said elevator with the plaintiff was so descending, by reason of the carelessness and negligence with which said elevator was built and constructed, and by reason of the carelessness and negligence of the defendants other than the Crane Elevator Company in using and operating said elevator car for the purposes aforesaid, before the same had been duly and properly accepted as aforesaid, and while the plaintiff was using due care, when said elevator had reached the point at or above the second floor of said building, the stand-pipe (by means of which said elevator was operated and raised and lowered) broke, and by reason thereof said car with the plaintiff dropped to the bottom of the shaft wherein said car was operated; whereby the

plaintiff was thrown down against said car, the lower part of his right leg or ankle was broken, etc. No city ordinance is set out by this count.

September 14, 1896, plaintiff, by agreement of parties, filed three additional counts, the first of which charges, in substance, that defendants were in possession of and operating said elevator, and negligence in operating it when the cylinder and cylinder heads were in an unsafe and dangerous condition; the second of which alleges, in substance, that defendants operated the elevator, and were negligent in its operation, with the pipes, etc., being untested and being of imperfect, unsound and defective material, which caused the elevator to suddenly drop to the basement, etc.; and the third of which additional counts alleges, in substance, that defendants were negligent in operating the elevator, carrying passengers before it had been properly tested to ascertain whether its different parts and appliances were properly constructed, and that the materials used were safe and proper; that the stand-pipe burst and gave way, and the elevator dropped, etc., whereby, etc.

All the defendants pleaded the general issue to the original and additional counts, and thereafter, by leave of the court, the Elevator Company filed a plea of the statute of limitations to each of the additional counts. A demurrer to this plea was sustained, and a trial before the court and a jury resulted in a verdict of guilty as to all the defendants, and damages $10,000. From this verdict plaintiff remitted $3,000, the several motions for new trial of defendants were overruled, and judgment entered, from which this appeal is taken.

. By inadvertence, so appellees' counsel state in their brief, the case was not dismissed as to the first and second counts of the original declaration, though they were practically abandoned at the trial, and no claim was made to recover under them.

The evidence shows that plaintiff went to the store of Field & Co., to purchase Christmas presents; that he reached the fourth floor of the building, and started to return to the

second floor by the elevator, which contained twelve or fifteen persons; that it descended, and near the top of the door of the second floor it suddenly fell to the basement with great force and violence, rebounded and then settled down again; that the force of the fall caused a fracture of the bones of his leg near the right ankle joint, nearly what is called a Pott's fracture, the bones being to some extent crushed, and a slight injury to his left leg near the knee; that the injury was very painful, was somewhat slow in healing, and rendered him unable to attend to business until August, 1894.

The evidence also shows that the contract under which the elevator in question, with others in the same building, was constructed, was made August 3, 1892, and among other things that the elevators were to be completed by March 31, 1893, and that the specifications provide that the elevators shall be high pressure (750 pounds) hydraulic passenger elevators, with iron guideposts, and other details of materials and workmanship not necessary to be enumerated; and also that the Crane Elevator Company's patent safety governor shall be attached to the cage, and that the operation of the safety governor is such that it is impossible for the car to fall from any cause; also that " every part of the elevators shall be erected in a substantial manner, and are guaranteed to be free from defect in material and in workmanship;" that the elevator in question was completed and put into service, carrying passengers in August or early in September, 1893, before the accident; that from the time it was put into service up to the time of the injury to plaintiff, the clear preponderance of the evidence is that the elevator was operated in connection with Field & Co.'s business by the employes of that firm, under its supervision and direction, in the carrying of passengers.

There is no evidence from which it could be found that the Crane Elevator Company had or exercised any control in the use or operation of the elevator in question after it was put into service in August or September, 1893. The evidence shows that immediately after the elevator had

fallen, there was a great rush of water from the elevator cylinder above to the car below, and later, it was ascertained that the bottom flange of the cylinder, which was made of semi-cast steel, was cracked through in two places, about twelve inches apart, but between, not in, the bolt-holes, through which it was made fast to the cylinder, and that these cracks caused the water to rush out and the elevator to fall; that the semi-steel of which this flange was made, was the usual material from which such flanges were constructed; that the flange was three by three and one-half inches, with twelve inches inside diameter; that prior to its use in the construction of this elevator, this flange had been subjected to a test by a hydraulic pump at a pressure of 1,500 pounds to the square inch; and also, after the elevator was constructed and ready for use, the flange and cylinder were again subjected to a like test, but showed no flaws nor defects, and that no flaw nor defect upon the outside of the flange, upon examination immediately after the accident by the vice-president and general manager of the Elevator Company, was discovered. This appears to have been a usual and ordinary test for an elevator subject to the pressure to which this one was ordinarily subjected, to wit, 750 pounds to the square inch. The broken flange was removed and the elevator repaired by the Crane Elevator Company, but the flange has been lost. The expert evidence shows that the only way in which the cracking or giving way of the flange can be reasonably accounted for, is that there was some hidden flaw or defect in it.

It further appears from the evidence that the Elevator Company, when the contract was made and the elevator constructed, was one of the most skillful and reliable firms in elevator manufacture in the United States; that it was competent to do the work called for by its contract, and that neither of the other defendants than the Elevator Company had any control over the details of the work of construction or of the materials used therein.

Besides the tests of hydraulic pressure, the elevator, before its use in carrying passengers, was also tested by the Eleva-

tor Company as to its safety appliances, by loading it with pig iron and allowing it to drop. It was found that they operated properly and stopped the elevator at a speed of about 400 feet per minute, and it was ordinarily run at 250 to 300 feet per minute.

There is a question in the evidence as to whether the safety appliances operated at the time of the accident. No tests of any kind of the elevator were made at any time after it was put in use up to the time of the accident. The evidence tends to show that the safety appliances were not called into operation, for the reason that the car, in falling, did not reach a speed sufficient to throw out the governor balls, and thereby operate the safety appliances.

At the close of the plaintiff's evidence, and also at the close of all the evidence, the defendants severally asked written instructions by the court directing a verdict of not guilty, which instructions were refused.

The following instructions, among others, were given for plaintiff, viz. :

" III.   The court instructs the jury that if they believe from the evidence that the plaintiff has made out a case, as charged in the declaration, or either count thereof, and that the defendant copartnership and the defendant corporation, at the time in question, were jointly concerned in the operation of the elevator in question and its appliances and connections, or at the time of said accident were jointly operating the same, then said defendants are jointly liable for the injuries which the jury may believe from the evidence the plaintiff has sustained from the fall of said elevator. On the other hand, if the jury believe from the evidence that the defendant corporation constructed the elevator and its appliances in question under a contract with Marshall Field, one of the defendants, and a member of the firm of Marshall Field & Co., and before the entire and satisfactory completion thereof consented to the use of said elevator by said firm of Marshall Field & Co., and that said firm used and operated the same pending the full completion and acceptance thereof under said contract, then the defendant corporation, as well as said defendants constituting said firm of Marshall Field & Co., are jointly responsible for the injuries sustained by the said plaintiff while using

said elevator, as charged in the different counts in the declaration herein.

"IV. The court further instructs the jury that the plaintiff has made out a *prima facie* case when he has proved, if the jury believe from the evidence that he has so proved, that at the time of the accident in question he was in the exercise of due and ordinary care, and without any fault on his part, was injured by the falling of the elevator cab in question; that is to say, if the jury believe from the evidence that the defendants were in the possession of and operating the elevator in question, as alleged in the declaration, at the time of the accident, and that the plaintiff, without any fault on his part, entered said elevator cab, and that while standing in said cab, in the exercise of ordinary care for his own safety, the said cab, when descending from one of the upper stories of said building, was precipitated or dropped to the bottom of the elevator shaft, striking the bottom thereof with such force as to injure the plaintiff in the manner described by the evidence, then the jury are instructed that the burden of proof is upon the said defendants to show if they can, by a preponderance of the evidence, that said accident was without any fault or negligence on their part."

"VI. The jury are instructed that if they believe from the evidence that the plaintiff was injured by the falling of the elevator in question, in which he was a passenger, and was thereby injured without fault on his part, he thereby makes out a *prima facie* case of negligence against such of the defendants as the jury may believe from the evidence were operating or in control of the elevator, and places upon them the burden of proving, by a preponderance of the evidence, that the accident resulted from a cause which could not have been foreseen or guarded against by the highest degree of human care, skill and foresight practicable."

"VIII. The court further instructs the jury that if they believe from the evidence, that, at the time of the accident in question, the elevator was being used for the carriage of persons to and from the different floors in the said building occupied by the firm of Marshall Field & Co., then the law is that all persons operating, or responsible for the operation of said elevator, are liable to the same extent as common carriers of passengers, and, as such, it was their duty to do all that human care and vigilance and foresight could reasonably do under the circumstances, and in view of the character and of the mode of conveyance adopted, reasonably to guard against accidents and consequential injuries; that the law is, that while a carrier of passengers in elevators

like the one in question, is not an insurer of the absolute safety of such passengers, nevertheless a carrier of passengers does, in legal contemplation, undertake to exercise the highest degree of care to secure the safety of passengers, and, as such, is responsible for the slightest negligence resulting in injury to a passenger, if the passenger, at the time of the injury, is in the exercise of ordinary care for his own safety; and the jury are further instructed that the care thus required by law of all carriers of passengers, applies to the safe and the proper construction and equipment of all of the machinery and appliances used in connection with the operation of the particular conveyance adopted.

" IX.    The court further instructs the jury that if they believe from the evidence that the plaintiff was injured while descending from the fourth to the second floor of the building occupied by the firm of Marshall Field & Co., at the time of the accident, in one of the elevators then in use by said firm, and in the manner and form as charged by the declaration, or either of the counts thereof, and that under the evidence and the law as given to you by the court he is entitled to recover at your hands, then in estimating the plaintiff's damages the jury may take into consideration the expense reasonably incurred by him in endeavoring to be cured of such injuries, his pecuniary loss, if any, shown by the evidence, his present physical condition and ability to carry on the employment or business in which he was engaged at the time of said accident and the prospect of his ultimate recovery, including such damages for pain and suffering endured by him while recovering from such injuries as the jury may believe from the evidence he is entitled to from all the facts and circumstances in the case.

" X.    The jury are instructed that any and all evidence introduced in this case, of events occurring after the date of the accident in question, should be considered by them solely in determining the relationship, if any existing, between the several defendants with reference to the operation of the elevator in question at the time of the accident, and in determining what, if anything, the defendants, or any of them, had to do with the operation of said elevator at the time of the accident.

" And the jury are further instructed that the above purpose or purposes are the only ones for which said evidence was introduced in this case, and that they, the jury, should disregard said evidence of events occurring after the accident in question in considering any and all other questions in this case."

HAMLINE, SCOTT & LORD and FRANK P. LEFFINGWELL, attorneys for appellants.

D. J. SCHUYLER and FRANK J. SMITH, attorneys for ▉▉▉ pellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

The first question is as to whether the demurrer to the plea of the statute of limitations was properly sustained. The first count of the original declaration fails to state any duty of the Crane Elevator Company to appellee, or any facts from which it can be said the Elevator Company owed any duty to appellee; nor does it state any negligence on the part of the Elevator Company. It fails to state that the Elevator Company used or operated the elevator. It therefore does not state a cause of action against the Crane Elevator Company. The second count fails to state facts which in law show any negligence of the Elevator Company of which the appellee can avail himself. It alleges that when the injury occurred, the appellants other than the Elevator Company, were using and operating the elevator, and the only negligence charged as against the Elevator Company in this count is the "negligence with which said elevator was built and constructed." This can not avail appellee as against the Elevator Company. There is no fact alleged showing privity between the appellee and the Elevator Company, without which there can be no liability of the Elevator Company in this case to appellee for alleged negligent construction of the elevator. The duty of the Elevator Company was to Field, not to the appellee, so far as concerns negligent construction. Wharton on Negli., Sec. 438; Curtin v. Somerset, 140 Pa. St. 76, and cases cited; Savings Bank v. Ward, 100 U. S. 195, 207; Ziemann v. Kieckhefer Elev. Mfg. Co., 63 N. W. (Wis.) 1021; Winterbottom v. Wright, 10 Mees. & W. 115; Losee v. Clute, 51 N. Y. 494.

Mr. Wharton states the reason for the rule that a con-

Field v. French.

tractor is not liable to third parties for negligence, sometimes given, is "that otherwise there would be no end to suits; but a better ground is that there is no causal connection between the injury and the contractor's negligence." In the Curtin case, *supra*, the court held that a contractor who erected a hotel building was not liable to a guest of the hotel for injuries received because of improper material used and defective construction of the hotel, and said : "If a contractor who erects a house, who builds a bridge or performs any other work—a manufacturer who constructs a boiler, piece of machinery, or a steamship, owes a duty to the whole world that his work or his machine or his steamship shall contain no hidden defect, it is difficult to measure the extent of his responsibility, and no prudent man would engage in such occupations upon such conditions. It is safer and wiser to confine such liabilities to the parties immediately concerned."

In the Zieman case, *supra*, the court held that an elevator manufacturing corporation was not liable to an employe of its vendee of an elevator who was injured by reason of a defect in the elevator while it was on trial and under the supervision of the vendor, the employe being engaged in work of his employer near the elevator when he was injured. The court say : " If this action could be maintained upon the allegations of negligent and improper construction of the elevator, it would follow that any one actually using it and receiving injury in consequence—a much stronger case than the present—might maintain an action against the manufacturer. This would be to introduce a rule which, we think, is not sustained by authority, and might lead to serious consequences." The same principle is recognized in Gibson v. Leonard, 143 Ill. 189, and the general rule that the contractor is not liable to third persons for negligent construction is stated to be well established in Empire Machinery Co. v. Brady, 164 Ill. 58.

Both these counts, then, showing no cause of action against the Crane Elevator Company, the additional counts can not stand as against the plea of the statute of limita-

tions, they being filed more than two years after the plaint-
iff's cause of action accrued.    There can be no re-statement
of a cause of action by the additional counts, as no cause of
action was stated as against the Elevator Company in the
original counts.    Eylenfeldt v. Ill. Steel Co., 165 Ill. 189.

We have considered the contention of appellee's counsel,
that the plea of the statute of limitations was improvidently
filed, and that the Elevator Company waived the time of
filing the additional counts, and are of opinion it is not ten-
able.    It was therefore error to sustain the demurrer to the
plea of the statute of limitations of the Crane Elevator
Company to the three additional counts.

But if this second count was good as to the Elevator Com-
pany, it proceeds upon the theory of joint operation of the
elevator by the other appellants and the Elevator Company,
and the proof fails to support this allegation.    For this
reason, the judgment being against the Elevator Company
and all the other defendants, the judgment must be reversed.
If it is erroneous as to one, it is erroneous as to all.    W. C.
Street R. R. Co. v. Morrison & Co., 160 Ill. 295, and cases
cited; Met. W. S. El'd R. R. Co. v. Strasburg, 79 Ill. App.
136.

The contention is made on behalf of Field & Co. that they
can not be held for the injury, as they claim the evidence
shows that the immediate cause of appellee's injury was a
defect in the flange, which was hidden and could not have
been discovered by the exercise of the highest degree of
care on their part; that the elevator was built by the
Elevator Company, an independent and competent con-
tractor, for Marshall Field; that it had been completed,
accepted and in use by Field & Co. long before the accident.

In so far as Marshall Field may be liable as owner, this
may be conceded; but it can not be said, as matter of law,
under the evidence, that the immediate cause of appellee's
injury was a defect in the flange.    That was a question for
the jury (Pullman Palace Car Co. v. Laack, 143 Ill. 259, and
cases cited), and the evidence tends to show that the safety
appliances which the Elevator Company guaranteed by its

contract with Field were such that it was impossible for the car to fall from any cause, failed to operate; that this was the cause of appellee's injury; that Field & Co. had notice that the safety appliances were a new design, and there is no evidence that there was any test made of the safety appliances after the elevator was put into service, some three months before the accident. There is expert evidence to the effect that a test should be made every other week of the safety appliances to ascertain whether they were in good working order.

There is also evidence which tends to show that the hydraulic tests (1,500 pounds pressure) to which the flange was subjected were calculated to strain the metal at weak points and not develop the weakness at once; that such tests should be, and in 1893 usually were, one-half more than the intended pressure to be carried (in this case 1,125 pounds), then leave the pressure on for a number of hours and rap and hammer on the metal to see that no part gives out.

In Hartford Dep. Co. v. Sollitt, 172 Ill. 225, the Supreme Court held that persons operating elevators are carriers of passengers, and the same rules applicable to other carriers of passengers are applicable to those operating elevators for raising and lowering persons from one floor to another in buildings. These rules require that the carrier should " do all that human care, vigilance and foresight can reasonably do under the circumstances, and in view of the character of the mode of conveyance adopted, reasonably to guard against accidents and consequential injuries," and if they do not do so they are responsible for all consequences which flow from such neglect. C. & A. R. R. Co. v. Byrum, 153 Ill. 135; C. & A. R. R. Co. v. Arnol, 144 Ill. 272.

It may, therefore, well be said, in view of the law and this evidence, there was a question for the jury as to whether Field & Co., in relying upon the tests made by the Elevator Company as to the sufficiency of the flange and the safety appliances, did all that human care, vigilance and foresight could reasonably do under the circumstances, in view of the

mode of conveyance, reasonably to guard against accidents. Fair-minded and honest men might reasonably differ on this matter.

From what has been said with regard to the sufficiency of the two counts in the original declaration as to the Elevator Company, and the evidence as to the joint operation by the Elevator Company and the other defendants of the elevator, it follows that the third instruction for the plaintiff was erroneous, because it allows a verdict on either count of the declaration and on the theory of joint operation, of which there was no evidence. The latter part of the instruction also tells the jury, in effect, that all defendants are liable for plaintiff's injuries, without reference to any act of negligence.

The fourth instruction for appellee is improper, because it also proceeds upon the theory of joint operation of the elevator by the Elevator Company and the other defendants, and also because, while all the counts of the declaration allege specific grounds of negligence, this instruction says that when the plaintiff has made a *prima facie* case, "the burden of proof is upon the defendants to show, if they can, by a preponderance of the evidence, that said accident was without any fault or negligence on their part."

The plaintiff's right to recover must be confined to the grounds stated in his declaration, but this instruction only requires plaintiff to make out a *prima facie* case, and then says, in effect, defendants must meet all possible cases which would entitle the plaintiff to recover without reference to whether he alleged or proved them. This is not the law. C. & A. R. R. Co. v. Rayburn, 153 Ill. 290; W. C. St. R. R. Co. v. Martin, 154 Ill. 523; C., B. & Q. R. R. Co. v. Levy, 160 Ill. 385, and cases cited.

The point is not made, but we think that as there may be another trial of this case we should state that there is a question as to whether this instruction is erroneous because it requires the defendants, after the plaintiff has made out a *prima facie* case, to prove their defense by a preponderance of the evidence. It does not appear to have been

directly decided in this State. In civil cases, unless the state of the pleadings require it, as, if the defendant has pleaded payment, release, set-off or justification, the defense only has to meet the plaintiff's case, not by a preponderance of evidence, but by evidence which will evenly balance the plaintiff's evidence. The general rule is that when the plaintiff makes affirmative allegations, as in this case, of negligence of the defendants, and the defendants plead the general issue, the burden is on the plaintiff all through the case to establish his case—that is, prove the specific negligence alleged—by a preponderance of the evidence, and he can not recover if the defendants' evidence is such as to evenly balance that of the plaintiff. 1 Jones on Evidence, Secs. 174 to 176, 181 and 182; 1 Wharton on Evidence, Sec. 357; 5 Amer. & Eng. Ency. of Law, 22; Heinemann v. Heard, 62 N. Y. 455; Scott v. Wood, 81 Calif. 400.

In speaking of the burden of proof being shifted when the plaintiff has made a *prima facie* case, Mr. Jones (1 Jones on Evid., Sec. 175), says: "All that is meant by this is, that there is a necessity of evidence to answer the *prima facie* case, or it will prevail; but the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue; and this burden remains throughout the trial."

In the Scott case, *supra*, the Supreme Court of California says: "It is by no means safe to infer that because a party has the burden of meeting a *prima facie* case, therefore he must have a preponderance of evidence. It may be sufficient for him to produce just enough evidence to counterbalance the evidence adduced against him." And further says, in speaking of the burden of proof being shifted to the defendant and back again to the plaintiff: "The two burdens are distinct things. One may shift back and forth with the ebb and flow of the testimony. The other remains with the party upon whom it is cast by the pleadings—that is to say, with the party who has the affirmative of the issue."

We are inclined to the view that the instruction would

be a better statement of the law, in this respect, if the words "a preponderance of" were omitted.

The sixth instruction for the plaintiff has the same element last referred to in the fourth, and besides requires the defendants to prove "that the accident resulted from a cause which could not have been foreseen or guarded against by the highest degree of human care, skill and forethought practicable."

As we have seen, the rule is that the carrier must exercise the highest degree of human care, vigilance and foresight which is *reasonable* under the circumstances and in view of the character of the mode of conveyance adopted, *reasonably* to guard against accidents, etc. R. R. Co. v. Byrum, 153 Ill. 135.

To the same effect are R. R. Co. v. Blumenthal, 160 Ill. 48; R. R. Co. v. Pillsbury, 123 Ill. 9–21; R. R. Co. v. Kerr, 148 Ill. 605, and cases cited; Penn. Co. v. McCaffrey, 173 Ill. 173. In the Kerr case a similar instruction, which omitted the modification of the phrase "practical operation of its road" by the word *reasonable,* was condemned, and the court say: "A railroad company, doing all that human care, vigilance and foresight can do, consistently with the practical operation of its road, in providing a safe road-bed, track, etc., could be required to make it of solid masonry, with ties of iron or stone, but ordinarily it would be unreasonable to require it to do so."

We think this instruction should have been modified, at least by the insertion of the word *reasonably* before the word *practicable.*

The plaintiff's eighth instruction in the first part states the rule as to the care to be exercised by the carrier properly, but in the latter part of the instruction the court tells the jury that the carrier undertakes to exercise "the highest degree of care to secure the safety of passengers, and as such is responsible for the slightest negligence resulting in injury to the passenger." This we think was contradictory, and calculated to mislead the jury. The highest degree of care, without any qualification, may be very different from the highest degree of care which is

*reasonable* under the circumstances and in view of the character of the conveyance.

We see no objection to the plaintiff's ninth instruction in so far as it relates to the defendants, other than the Elevator Company, as to which it was improper because the evidence did not justify the instruction.

The plaintiff's tenth instruction was proper. The evidence to which the instruction refers would clearly have been improper if not limited to the specific purpose for which it was offered.

Numerous instructions asked for defendants were refused, and some modified, and given as modified, by the court, all of which we have considered, and find no reversible error in any of the rulings of the court as to such instructions. It seems to us unnecessary to discuss them in detail.

Numerous objections as to the admission and exclusion of evidence are made, all of which we have considered, and while we are inclined to think that in none of the court's rulings on the evidence is there reversible error, it is not important now to pass on the questions discussed, for if there was error it may be avoided in another trial.

It is also claimed that the judgment is excessive, and that it was the result of the misconduct of counsel for plaintiff during the trial and in the argument to the jury. The conduct of plaintiff's counsel in insinuating that one of defendants' witnesses was a spy and an informer was highly improper and should have been rebuked by the court. Also the statements of counsel in argument, not supported by the evidence, were grossly improper, calculated to prejudice the jury, and should have been promptly reprimanded by the court.

It is, however, unnecessary in this case for us to consider whether the misconduct of counsel was, under all the evidence, sufficient to justify a reversal of the judgment for that reason. Such a question should not arise on another trial.

For the errors in sustaining the demurrer to the plea of the statute of limitations, in not directing a verdict of not guilty as to the Crane Elevator Company, and in the giving

of certain instructions for plaintiff above referred to, the judgment is reversed and the cause is remanded.

MR. JUSTICE SEARS, dissenting.

I do not concur in the conclusion reached by a majority of the court as to the application of the statute of limitations.

The second of the original counts alleged, in substance if inartificially, that all the defendants jointly operated the elevator as a common carrier; that plaintiff was a passenger and was injured by reason of a defect and fault in the machinery of the elevator. The allegations of the additional counts which charge all defendants with a liability as common carrier to appellee, a passenger, are but re-statements of those substantial allegations of the original declaration. It does not matter what else was contained in the original counts or how much there may have been which was ineffective or badly pleaded, if with it all the substance of the new allegation was contained. Because the evidence failed to sustain these charges of the original declaration, is not reason for holding that the plea of the statute was good.