## Chicago City Ry. Co. v. Orlin B. Morse.

1. CARRIERS OF PASSENGERS—*Required to Use the Highest Degree of Care.*—In this State, a carrier of passengers, while not an insurer of the absolute safety of the passenger, must use the highest degree of care to secure his safety, when such passenger is in the exercise of ordinary care, reasonably consistent, in view of the character of the conveyance in use.

2. NEGLIGENCE—*In the Management of Street Cars.*—In the management of a street car a sudden and violent stopping of such car, unless it is unusual in degree and caused by some defect in the car or in the track, or by some unusual or dangerous rate of speed, furnishes no evidence of negligence on the part of the company.

3. SAME—*When a Presumption of, is Raised.*—Where the plaintiff is a passenger on a street car, a *prima facie* case of negligence is made out by showing the happening of the accident, and if the injury is caused by apparatus wholly under its control, furnished and applied by it, a presumption of negligence on the part of such company is raised.

4. PRESUMPTIONS—*Of Negligence Raised by an Accident.*—The happening of an accident to a passenger on a street car during the course of his transportation, raises a presumption that the street car company has been guilty of negligence.

5. DAMAGES—*Where $2,000 is Not Excessive.*—A bookkeeper, thirty-three years of age, while a passenger upon a street car, was injured by the sudden and violent stopping of the car, so as to produce a serious and permanent inguinal hernia; a verdict in his favor for $2,000 and a judgment thereon is not excessive, nor does it follow because the jury gave more by one-half than the trial court would have been disposed to give, that such verdict shows passion or prejudice on the part of the jury.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding.

Chicago City Ry. Co. v. Morse.

Heard in this court at the March term, 1901.   Affirmed.   Opinion filed December 12, 1901.

**Statement.**—Appellee, a bookkeeper, aged thirty-three years, on January 24, 1899, while a passenger upon one of appellant's electric cars, claims to have been injured by the sudden and violent stopping of the car so as to produce a serious and permanent inguinal hernia, and brought suit against appellant, a trial of which before the court and a jury resulted in a verdict in his favor of $2,000 and judgment thereon, to reverse which this appeal is taken.

WILLIAM J. HYNES, SAMUEL S. PAGE and WATSON J. FERRY, attorneys for appellant; MASON B. STARRING, of counsel.

JAMES C. McSHANE, attorney for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

No question is raised upon the pleadings nor as to procedure.   The first contention of appellant's counsel is that the verdict is not justified by the evidence; and in this regard it is argued that the proof fails to show that appellant was guilty of negligence.   We are unable, after a careful consideration of the evidence in the light of counsel's argument and the authorities cited, to yield assent to the claim.   We think the evidence presents a question of fact for the jury, and a finding that appellant was negligent, as charged in the declaration, in suddenly and violently stopping its car while appellee was riding thereon as a passenger, is justified.

The evidence of appellee in this regard is, in substance, that he boarded appellant's west-bound car at Forty-seventh street and Champlain avenue, Chicago, and paid his fare; that the seats were all occupied, several people were standing in the aisle of the car, which was about twenty-five or thirty feet long, and that he stood up near the middle of the car, holding on by his right hand to a movable strap immediately over him; that the car filled up quite rapidly,

and by the time it reached the vicinity of Halsted street it was very much packed—the people were standing very closely together—as close as they possibly could be, and filled the aisle of the car its entire length; that as the car proceeded on its way the stops it made were sometimes sudden; the car was handled roughly; that at every crossing it came up with a jerk; that when the car stopped at Forty-seventh and Halsted streets to let passengers off "it was accompanied by a very violent jerk. It came just like that—very suddenly, and I was standing about midway of car holding onto a strap, facing north and partly in direction car was going, obliquely across the car, and as the car stopped there, there were a great many standing all around, about as thickly as they could possibly stand, and when it came to that stop the people were thrown forward in the car. I was holding onto a strap in this manner (indicating he was holding on with his right hand), and a great many were standing in the car that were not holding onto supports, and when the car came to that stop it threw the weight on my back here. Of course I didn't want to be thrown off my feet and I held onto the strap, and at that time I felt a very sharp pain in right groin. I was facing northwest and standing holding onto the strap, when the car came to a stop, and the weight of the people struck me in the small of the back, and it threw my body in this direction (indicating), bending backward. The people that shoved me were back of me and all around me. I know that the people were thrown, and I got the good bulk of the weight thrown against me."

Appellee is corroborated by the witnesses Wyatt, Weems and Buckham, who were passengers on the car, as to the sudden and violent stopping of the car. Wyatt says: "It stopped with a lurch, so much so that people were shaken back and forth in the car. By lurch, I mean it stopped in a manner that would throw back and forth those who were standing."

Q. "Was there anybody thrown against you? A. They bumped against me, those that were standing, and I

felt them push against me as the car lurched back and forth."

Weems says the car stopped with a very sudden jolt; "so much so that the crowd—those that were standing—were thrown with the car, swung in the opposite direction."

Buckham says: "When the car reached Halsted it came to a sudden stop, with a jerk. I was thrown against the motorman. I was on the front platform."

All these witnesses agree that the car was crowded—people were standing in the aisle, and appellee says that he received the injury for which the suit was brought at the time of this stop at Halsted street, and after leaving the car, which he did a few blocks after passing Halsted street, appellee told Weems of his injury. We think the evidence tending to show negligence in permitting the car to become crowded by passengers standing in the aisle, and as to the manner of stopping the car, was properly submitted to the jury, and can not, as matter of law, be said to be so insufficient as not to justify a finding of negligence. On this point appellant's counsel rely on the case of Byron v. R. Co., 177 Mass. 303, and Aikin v. Southern Pacific Co., 29 So. Rep. 1. The latter case we do not regard as applicable here, nor the former as controlling the case at bar. In the latter case the court say, speaking of the handling of a steamboat in approaching a landing at night, that there was nothing to show a want of care in that regard; that instead of the boat being negligently handled, it showed the contrary; that the blows at the pilings which caused the injury were such as were habitually made. In this case there is no evidence of a careful handling of the car, and it tends to show that the violent stopping was not usual nor ordinary. That case, therefore, differs from this case, in which, as we have seen, the evidence tends to show a negligent stopping of the car. In the Byron case the language of the court in speaking of a charge of negligence, by a swaying, jolt or lurch of an electric car as it returned to a main track from a siding, is that "unless they are unusual in degree and caused by some defect in the car or the track, or by some

unusual or dangerous rate of speed, they furnish no evidence of negligence on the part of the carrier;" but it also says in closing the opinion, that " the jar felt by the different witnesses was not so great as to be unusual, or as to justify a finding that it was due to the negligence of the defendant or of its servants." This last statement we think clearly distinguishes the case from the one at bar. Moreover, we regard the language of the court first above quoted, to say the least, as laying down an extreme rule. It is not supported by either of the cases cited in the opinion of the court, all of which were based upon the contributory negligence of the plaintiff. Had the word " or " been used instead of "and," after the word "degree," so as to read " unless they are unusual in degree *or* caused by some defect in the car," etc., then we could perceive no objection to such a rule.

In this State it is settled law that a carrier of passengers, while not an insurer of the absolute safety of the passenger, must use the highest degree of care to secure the safety of the passenger, when he is in the exercise of ordinary care, that is reasonably consistent in view of the character of the mode of conveyance in use. R. R. Co. v. Byrum, 153 Ill. 134, and cases cited; Springer v. Ford, 189 Ill. 430–4; affirming 88 Ill. App. 530; Field v. French, 80 Ill. App. 78–91, and cases cited.

In the Springer case the court quotes with approval the following language from R. R. Co. v. Blumenthal, 160 Ill. 48, as follows:

" The happening of an accident to a passenger during the course of his transportation raises a presumption that the carrier has been negligent. The burden of rebutting this presumption rests upon the carrier. Undoubtedly the law requires the plaintiff to show that the defendant has been negligent. But where the plaintiff is a passenger, a *prima facie* case of negligence is made out by showing the happening of the accident. If the injury to a passenger is caused by apparatus wholly under the control of the carrier, and furnished and applied by it, a presumption of negligence on its part is raised."

So here, the evidence shows a *prima facie* case of negli-

Chicago City Ry. Co. v. Morse.

gence which is unexplained or in any way justified by the appellant.

The following cases are somewhat similar in their facts as to the cause of injury, and in each it was held the question was proper to be submitted to the jury, viz.: R. Co. v. Pollard, 22 Wall. 341; Spearman v. California St. R. R. Co., 57 Calif. 432; Dougherty v. R. Co., 81 Mo. 325.

In the first two cases a judgment for the plaintiff was affirmed, and in the last case, the court having taken it from the jury, it was remanded for a new trial.

Under a claim of appellant's counsel that the verdict is excessive, it is argued that appellee's injury could not have been produced by the sudden and violent stopping of the car, and that if appellee suffers at all from hernia, it resulted from some other cause than that claimed by him. We have carefully considered the evidence in this regard, and think it presents a question peculiarly for the jury. It is unnecessary to state it in detail. Appellee testifies that prior to this occasion he had nothing of the kind complained of the matter with him; had suffered no bodily injury at all; that at the time of the sudden or violent stopping of the car he felt a sharp pain in his groin, and when he started to walk he noticed a swelling in the groin, and upon examination found that he was ruptured. Soon thereafter, within about three hours, he consulted a physician and surgeon, who examined him and found a hernia in the right inguinal region about the size of a small hen's egg, which "extended to external opening of inguinal canal and projected into the neck of the scrotum perhaps three-quarters of an inch.   *   *   *   It was an oblique inguinal hernia." Both the appellee and the surgeon testify in great detail as to the condition of appellee and the circumstances attending the injury, the effect upon the appellee and the treatment given him.   Both the attending surgeon and another of wide experience gave it as their opinion that the injury claimed to have been suffered by appellee could have resulted from the cause testified to by him.   That appellee claimed to have been injured at the very time he says he

was, receives the corroboration of the witness Weems, who was on the car with appellee at the time of the accident. As against this evidence there is the testimony of three expert and experienced surgeons called by appellant, who gave it as their opinion that such a hernia as appellee is shown to have suffered could not have been caused in the manner he claims it was caused; also the evidence of the motorman that he did not in January, 1899, at the place in question, bring his car all of a sudden to a stop, and of the conductor that he did not remember such a stop on January 24, 1899, the date of the accident.

All this evidence we have read and carefully considered, and are unable to say that, considered as a whole, appellee's claim and the verdict are not justified.

It is strenuously argued that the verdict is excessive in amount, and is the result of passion and prejudice on the part of the jury. This claim, while not without basis in the record, is, we think, untenable.

The learned trial court, in passing upon appellant's motion for new trial, said:

"I will have to overrule the motion for new trial. But, as I have said before, it is more than I would give, possibly double the amount. But I can not say it is caused by passion or prejudice, except possibly the prejudice that may exist against railroad companies. In that regard I am powerless."

This, it is argued, amounts to a holding that the jury was actuated by passion or prejudice, and that the verdict is thereby vitiated. We think the court's language should not be so construed. It does not follow that because the jury gave more by one-half than the court would have been disposed to give, that therefore the verdict shows passion or prejudice. The court in effect says as much, except that it is qualified by the intimation that there might *possibly* be a prejudice against railroad companies. Before the court would have been justified in disturbing the verdict because of the amount, on account of prejudice, it should have been convinced, not that prejudice *possibly* existed, but that it certainly influenced the verdict. When so convinced there

should be no hesitation in correcting the wrong.   We have, however, fully considered the evidence in this respect, and do not think the verdict should be disturbed.   The injury is in all probability a permanent one, unless it should be removed by an expensive and serious surgical operation, which might not prove successful, will prohibit appellee from any pursuit of life requiring more than ordinary physical exertion, and will deprive him of the pleasures and benefits of many physical exercises, and unless he should be cured, he would be compelled for life to be subjected to the inconvenience and annoyance of wearing a truss.

The judgment of the Superior Court is affirmed.