## James H. Jones, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 14,501.

1. NEGLIGENCE—*when traction company not guilty.* If plaintiff, in an action brought to recover for personal injuries, fell from a traction car as it was running in the usual manner, with only the ordinary motion or swaying of the car, no right of action arises.

2. NEGLIGENCE—*when manner of handling traction car constitutes.* If a motorman sets his brake so hard and in such a manner as to cause the car violently to jerk and lurch and thereby and as a direct result thereof one passenger is thrown against another so that such other is pushed or thrust from the platform upon which he was standing, negligence is established.

3. NEGLIGENCE—*manner of applying brakes.* It is the duty of a motorman so to set his brakes to stop his car as not to endanger the safety of passengers known to him to be riding upon the platform.

4. INSTRUCTIONS—*need not repeat.* It is not error to refuse a correct instruction the substance of which is contained in another given.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed March 26, 1909.

FRANKLIN B. HUSSEY, WM. J. HYNES and WATSON J. FERRY, for appellant; JOHN R. HARRINGTON, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the defendant from a judgment for $2,000 recovered in an action on the case for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant.

Plaintiff was a passenger on a west bound electric street car of defendant in Thirty-ninth street, Chicago. The declaration alleged that he was such pas-

senger and was riding on the front platform of defendant's car; that defendant's motorman in charge of said car so negligently, etc., ran and managed said car that in consequence thereof said car, while in rapid motion, violently jerked and lurched backward and forward and thereby another passenger on said car was thrown against the plaintiff and the plaintiff was thereby thrown from the car to the ground and injured, etc. Plaintiff stood on the platform with his back against the front end of the car at the right and north of the door. To his left, with his back against the door, stood McNaughton. As the car approached Calumet avenue plaintiff fell or was thrown, to the north, from the platform down to the ground and injured. The testimony of plaintiff and of McNaughton was that as the car approached Calumet avenue, McNaughton requested the motorman to stop at that avenue; that plaintiff then stepped forward to permit McNaughton to pass behind him to the step on the north side of the platform; that as he did so, the motorman took hold of the brake lever, pulled it back violently, thereby applying the brakes so hard as to cause the car to lurch or jerk violently; that by such jerking or lurching McNaughton was thrown violently against plaintiff and thereby plaintiff was thrown from the car. Hart, a witness called by plaintiff, testified that he was a passenger standing inside of the car, hanging on to a strap; that the car gave a sudden lurch and he saw something "shoot" from the car; saw an object fall from the front platform at the north; that he called out, "Stop the car", rang the bell; that the car stopped and he saw plaintiff lying on the street and helped to carry him into a drug store.

For the defendant, the motorman, the conductor and four passengers on the car testified. The motorman testified that the first notice he had that anything unusual had happened was when he got the emergency signal—three bells—to stop; that he did not see plaint-

iff fall from the platform; that the car did not lurch or jerk before he got the emergency signal; that McNaughton did not ask him to stop at Calumet avenue and he did not set the brakes to stop there, or set the brakes at all just before the accident. The conductor testified that he stood on the rear platform and saw a man lying in the street and gave the emergency signal to stop the car, and helped to pick up plaintiff and carry him into a drug store; that up to the time he gave the emergency signal, there was no jerking, lurching or sudden movement of the car. None of the passengers who were witnesses for defendant saw plaintiff fall from the car, and the attention of each was first attracted, either by the emergency signal, or by a cry to stop the car, and each testified that he had not noticed any unusual movement of the car before he heard such bell or cry.

If plaintiff fell from the car as the car was running in the usual manner with only the ordinary motion or swaying of the car, he has no right of action against the defendant for injuries sustained by such fall. The contention of the plaintiff was that the motorman was requested by McNaughton to stop the car at Calumet avenue; that on approaching that avenue the motorman set the brakes to stop the car, and that he negligently set the brakes so hard and in such an improper manner as caused the car to jerk and lurch violently, and that thereby McNaughton was thrown against the plaintiff and pushed plaintiff from the car. The question whether McNaughton requested the motorman to stop at Calumet avenue is only important in so far as it bears on the other contentions of plaintiff. Both plaintiff and McNaughton testified that as the car approached Calumet avenue McNaughton asked the motorman to stop at that avenue, and McNaughton testified that he lived on Calumet avenue near Thirty-ninth street and was on his way home. Opposed to this testimony, on this point, was only the testimony of the motorman, and from the evi-

dence the jury might properly find that McNaughton asked the motorman to stop at Calumet avenue. On the question whether the motorman set the brakes just before the plaintiff fell or was thrown from the car, the contention of the plaintiff is supported by the testimony of plaintiff and McNaughton and by the fact that McNaughton requested the motorman to stop at Calumet avenue, and is opposed only by the direct testimony of the motorman.

On the question whether the car jerked or lurched just before plaintiff fell or was thrown from the car, the contention of the plaintiff is supported by the positive testimony of the plaintiff, McNaughton and Hart, and is opposed by the testimony of the motorman, the conductor and four passengers, to the effect that they did not notice any jerking, lurching or other unusual motion of the car before plaintiff fell or was thrown from it. The testimony for the plaintiff tends to explain and account for the fall of the plaintiff from the platform, and that for the defendant does not account for or explain such fall.

We think that from the evidence the jury might properly find that the motorman set the brakes on the car just as plaintiff let go his hold on the bars or rods behind him and stepped forward to permit McNaughton to pass behind him; that he set the brakes so hard and in such manner as to cause the car violently to jerk and lurch, and that thereby and as a direct result thereof McNaughton was thrown against the plaintiff and pushed or thrust plaintiff from the platform.

The motorman testified that there were five passengers on the front platform. It was therefore his duty, if he set the brakes to stop the car, to use care to so set them as not to endanger the safety of the passengers on the platform. In C. C. Ry. Co. v. Morse, 98 Ill. App. 662, affirmed in 197 Ill. 327, a judgment for the plaintiff was sustained where his right of action was based on the theory that he was injured

by the violent jerking or lurching of an electric street car in which he was a passenger, and that such jerking or lurching was caused by the negligence of the motorman in so stopping the car as to cause such jerking and lurching.

From the evidentiary facts above stated which, as has been said, the jury might properly find in favor of the contention of appellant, the jury might, we think, properly find that the motorman in setting the brakes in the manner he did set them, was guilty of the negligence alleged in the declaration; that by reason and as a direct result of such negligence plaintiff was thrown from the car and injured and, therefore, the verdict of the jury cannot be held to be against the evidence.

Appellant further contends that the damages are excessive. Plaintiff was injured seventeen months before the trial. He testified that since his injury he had been totally deaf in one ear; that his sight and sense of taste had since that time been impaired; that he had suffered from dizziness and frequent and severe headaches. It was for the jury to say whether in fact, plaintiff's condition had, since his injury, been such as he testified it had been, and whether such condition was the result of his injury.

We do not think that the judgment should be reversed on the ground that the damages are excessive.

We find no error in the rulings on questions of evidence nor in the remarks of the presiding judge during the trial.

Complaint is made of the refusal to give for the defendant the following instructions:

"The jury are instructed that the law does not exact or require of a street car company that its servants should be all the while upon their guard against dangers not reasonably to be expected, or against unusual or extraordinary occurrences or conduct on the part of others, nor does it require such companies to conduct their business with a degree of caution that would prevent the practical operation of their roads.

"If you believe from the evidence, under the instructions of the court, that on the occasion in question the plaintiff failed to exercise ordinary care for his own safety, and that such failure, if any, caused or proximately contributed to cause the injuries complained of, then the plaintiff cannot recover, and you should find the defendant not guilty."

The court gave for the defendant the following instruction:

"The court instructs the jury that the relation of passenger and carrier does not make the carrier an insurer of the absolute safety of the passenger. The carrier does not guarantee that it will protect passengers against remote, unusual and extraordinary perils not to be foreseen by the exercise of the highest degree of care consistent with the practical operation of the carrier's railroad. The carrier is not required to exercise a degree of care which is not practicable in the operation of its business, and if the jury believe from the evidence, under these instructions, that the injury to the plaintiff could only have been prevented by the exercise of a degree of care and protection not reasonably practicable in the operation of the defendant's street railroad, then the plaintiff cannot recover, and the jury should find the defendant not guilty."

This instruction is substantially the same as the first refused instruction.

The court, for the defendant, instructed the jury "that before the plaintiff can recover he must prove that the defendant was guilty of the specific negligence charged in the declaration, or some count thereof, which caused the injury, and that the plaintiff himself was free from any want of ordinary and reasonable care for his own safety on the occasion in question", and also that the plaintiff could not recover unless the jury believed from a preponderance of the evidence that he had proved: "That the plaintiff was exercising ordinary care for his own safety at and just prior to the time of the accident in question."

These instructions contain all that is material in the second refused instruction above set forth.

The defendant was not prejudiced by the refusal to give said instructions.

The record is, we think, free from error and the judgment of the Superior Court will be affirmed.

*Affirmed.*