Thomas J. Healey, Administrator of the Estate of Ella N. O'Neill, Deceased, Appellee, v. Charles Heidel and Henry A. Beck, trading as Heidel & Beck, Appellants.

## Gen. No. 23,836.

1. NEGLIGENCE, § 46*—*when independent contractor not liable to third persons for injuries due to defective construction or installation.* The general rule is that where an independent contractor is employed to construct or install any given work or instrumentality, and has done so and it has been accepted by the employer and the contractor has been discharged, the latter is no longer liable to third persons for injuries received as the result of defective construction or installation.

2. NEGLIGENCE, § 46*—*when independent contractor liable for injuries to third persons after work has been accepted.* Exceptions to the general rule relieving an independent contractor from liability to third persons for injuries received after his work has been accepted and he has been discharged arise where the thing dealt with is imminently dangerous in kind, or where it is to be used for a particular purpose requiring security for the protection of life, or where it is rendered dangerous by a defect of which the contractor knows but which he deceitfully conceals and which causes an accident, where the thing is used for the particular purpose for which it was constructed.

3. NEGLIGENCE, § 46*—*when independent contractor not liable for death of third person due to known defect after work has been accepted and he has been discharged.* The exception which renders an independent contractor liable to third persons, even after the acceptance of his work and his discharge, where injury is caused by a defect, known to him but deceitfully concealed, while the appliance is being used for the purpose for which it was made, does not apply to a death resulting from a fall caused by the pulling out and breaking of a window parting stop while deceased was holding on the window in leaning out to wash it, which stop had been installed by the contractor and merely fitted in a groove without nailing or other fastening, where there was no evidence of concealment, but it appeared that the work had been twice examined and had been accepted, that the fitting of the stop in a groove without other fastening was good workmanship, that another method of fastening the stop would not have prevented the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

accident and that, when the accident happened, the stop was not being used for the purposes for which it was constructed, but the general rule exempting the contractor from liability applies.

4. NEGLIGENCE, § 52*—*when proximate cause of injury to third person due to defect in work of independent contractor is intervening negligence of owner of building.* When one for whom a building has been erected by an independent contractor accepts the building, the law presumes that it was done to his satisfaction and that it there became his own and he assumed the duty to take care that it was free from dangerous defects, and that if he knew or by the exercise of reasonable care could have discovered a defect which causes an injury to a third person, his negligence intervenes and cuts off the causal connection between the contractor's fault and the injury.

Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded. Opinion filed April 29, 1918.

KOCH, LEEDLE & RAPP, for appellants.

LITZINGER, HEALY & REID, for appellee; JAMES J. FINN, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

By this appeal defendants seek the reversal of a judgment against them of $1,250 recovered in an action in which plaintiff asserted the death of Ella N. O'Neill through the negligent and improper performance of a contractual obligation of the defendants. It is argued as ground for reversal that the evidence fails to show any actionable liability of the defendants.

It appears from the evidence that on July 18, 1910, the defendants were contractors and builders in Chicago; that on that date Nicholas O'Neill, husband of the deceased, owned a lot upon which he wished to erect a two-flat building; that defendants made him a written proposition for its construction, including ma-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

terial and labor to be performed according to plans and specifications prepared and submitted by O'Neill; that the specifications required all material to be of the best and the work to be executed in a thorough, workman-like manner. This proposition was accepted by O'Neill at the agreed price of $7,000. In August, 1910, the defendants commenced the construction of the building, which was completed and delivered to O'Neill on or about November 1, 1910, who after inspecting it paid the defendants in full and accepted the building and took possession of it, renting the upper flat and occupying the lower flat himself.

On June 11, 1912, at about 11 o'clock in the morning, the deceased, Ella N. O'Neill, was washing windows and cleaning in the second flat. When last seen she was sitting on a window sill, with her body outside of the window and her legs hanging over the sill into the room; she had the lower sash of the window pulled down so that it came across her legs, and was holding onto it with her left hand and was washing the outside of the windowpane with her right hand. A noise was heard by a decorator who was working in the flat, who ran into the room where Mrs. O'Neill had been working, but she had disappeared from the window and was lying on the ground underneath so injured that she subsequently died. Nicholas O'Neill was called home, and about 4 o'clock made an inspection of the premises and the window. He testified that he found the lower sash of the window and a portion of what is known as the parting stop down in the yard; that the stop was broken and had no nails in it. The parting stop is the narrow strip of wood, inserted in a groove in the sides of the window frame, which divides and runs between the upper and lower window sashes. The jury properly could conclude that while Mrs. O'Neill was leaning backward holding onto the lower sash the parting stop pulled out at the lower end and broke about halfway up, so that the lower

sash of the window swung outward causing her to lose her balance and fall. Plaintiff sought to show that the defendants were negligent in the construction of the window sash in that this parting stop was not nailed to the frame; and one witness testified to this effect. As against this a number of witnesses testified on behalf of the defendants that as a general practice the parting stop was not nailed in but was held tightly in the groove in which it was inserted; that the lower sill of the upper sash and the upper sill of the lower sash are both cut with a bevel, called the check rail, which projects over the parting stop and holds it in place. There was also testimony that in the spring or early summer of 1911, at the request of Nicholas O'Neill, the defendants sent the foreman who had charge of the construction of the building to inspect the doors and windows of the second flat, and he testified that he went all over them and that the parting stops in the various windows were in place and fitted properly.

Do these facts disclose a case for which defendants can be held answerable to the plaintiff in an action in tort? The general rule is that where an independent contractor is employed to construct or install any given work or instrumentality, and has done the same and it has been accepted by the employer and the contractor discharged, he is no longer liable to third persons for injuries received as the result of defective construction or·installation. Among many cases stating the rule thus are *Field v. French*, 80 Ill. App. 78; *Empire Laundry Machinery Co. v. Brady*, 164 Ill. 58; *Curtin v. Somerset*, 140 Pa. St. 70; *Fitzmaurice v. Fabian*, 147 Pa. St. 199; *First Presbyterian Congregation v. Smith* [163 Pa. St. 561], 26 L. R. A. 504, and cases there annotated. In Wharton on Negligence (2nd Ed.), sec. 438, the reason for the rule is said to be "that otherwise there would be no end to suits; but a better ground is that there is no causal connection * * * between the injury and the **contractor's**

negligence.'' See also the opinion in *Wood v. Sloan,* 20 N. M. 127, and the cases annotated upon this subject in volume 12, beginning at page 562, of Negligence and Compensation Cases Annotated.

Although the reported decisions are not uniform in classifying the exceptions to this general rule, they may be fairly classified as follows: (1) Where the thing dealt with is imminently dangerous in kind, such as poisonous drugs incorrectly labeled, dangerous chemicals, unwholesome food, a defective gun, explosives, and the like; (2) where the subject-matter of the contract is to be used for a particular purpose, requiring security for the protection of life, such as a scaffold (*Devlin v. Smith,* 89 N. Y. 470; *Empire Laundry Machinery Co. v. Brady,* 164 Ill. 58); (3) where the thing is rendered dangerous by a defect of which the constructor knows but deceitfully conceals, which causes an accident where the thing is used for the particular purpose for which it was constructed; examples are wooden appliances made of defective wood whose defects are concealed by paint, such as a step-ladder (*Schubert v. J. R. Clark Co.,* 49 Minn. 331; *Krahn v. J. L. Owens Co.,* 125 Minn. 33).

Obviously the instant case does not fall within the first two classes of exceptions. Does it fall within the third? We are of the opinion that it does not.

The existence of the defect claimed is at least doubtful. The weight of the evidence tends to prove that it was good workmanship not to use nails to fasten the parting stops but to rely upon their fit in the grooves and the check rails to hold them in place; that they fitted properly is not denied. But even if the absence of nails was a defect, the evidence fails to show any deceit by the defendants. The manner of construction in this respect was apparent to the sight of any one. The owner inspected it before he accepted the building; subsequently he made another examination, and in his complaint about the windows did not mention the ab-

sence of nails in the parting stops. At most, defendants may have failed in the matter of judgment as to the best manner of doing the work, but there was no concealment or deception practiced by them.

Plaintiff's expert witness testified that one nail 1¼ inches long should have been placed at the bottom of the stop, which is a pine strip ¾ by ½ inch in size. There was evidence that there was nothing directly back of it to which a nail could be fastened, so that the nail would have to be driven at a slant. This makes it very doubtful whether the use of such a nail would have prevented this accident. It cannot be said to have been proven that the absence of the nail alone caused the stop to become unfastened.

The accident was not caused while the stop was being used for the particular purpose for which it was constructed. The purpose of the parting stop is to guide and hold the sashes in position. It is about 5 feet long, and about half of its ¾ of an inch width is set in a groove in the frame, the other half running along the side of the window sash. Plaintiff's expert witness says they should be placed so that they can readily be removed, which is necessary whenever the weights or window cords need attention. Evidently they were not constructed for the purpose of withstanding any considerable strain, and were not intended or built to support the pull or weight of a strong person, weighing 160 pounds, such as the evidence shows Mrs. O'Neill to have been.

The evidence fails to establish the elements necessary to bring this case within any exception, and we must apply the general rule and hold that when the owner accepted the building the law presumes that it was done to his satisfaction; that it then became his own, and he assumed the duty to take care that it was free from dangerous defects, and that if he knew or by the exercise of reasonable care could have discovered the defect, his negligence intervenes and cuts off

the causal connection between the fault of the contractor and the injury. *Curtin v. Somerset,* 140 Pa. St. 70; *Field v. French,* 80 Ill. App. 78, and cases noted in 26 L. R. A. 504.

At the close of the taking of evidence the defendants asked the court to instruct the jury to bring in a verdict of not guilty, which motion was refused. Such an instruction should have been given, and for the error in refusing defendants' motion the judgment is reversed and the cause is remanded.

*Reversed and remanded.*