## Walker, Appellant, v. McNichol Paving and Construction Company.

Argued December 4, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

268

*C. Donald Swartz,* of *Swartz, Campbell & Henry,* with him *Raymond Pace Alexander* and *Herbert A. Barton,* for appellant.

*Charles E. Kenworthey,* with him *Laurence H. Eldredge* and *Evans, Bayard & Frick,* for appellee.

OPINION BY MR. JUSTICE BARNES, January 29, 1937:

The plaintiff's husband, Shellie B. Walker, was killed during the construction of a building at Twelfth and Market Streets, Philadelphia. The general contractor for the erection of the building, the George A. Fuller Company, on March 26, 1931, awarded a contract to the defendant for the "excavation and backfill" work according to plans and specifications. In inviting defendant's bid for this work, the general contractor by its letter dated March 11, 1931, instructed defendant as follows: "do not include any underpinning, caissons, shoring, sheet piling and/or pumping, as this work will be done by us or others employed by us." Accordingly, defendant's contract *included* the work of excavation and backfill, and by its terms *excluded* any of the shoring and underpinning in connection with the job.

The defendant, on May 28, 1931, eight days prior to the accident, had fully completed all excavation work along the south bank of the lot, as required under the contract. As completed, the excavation was 36 feet deep with a setback or slope from the vertical of 12 feet. As the contract did not specify such work, defendant did not shore the south bank as the excavating progressed, or at any time thereafter.

The decedent, Walker, who was an employee of the Foundation and Construction Company, (another subcontractor of the Fuller Company) was working in one of the caisson pits along the base of the south embankment on June 6, 1931, when the wall of earth and gravel above him caved in and he was crushed and killed as it slid into the excavation. It is conceded that the accident to decedent happened through no fault of his own, and that he was working in the caisson pit pursuant to his employment.

On May 29, 1931, the day following the completion of the excavation by defendant along the south bank, the general contractor began to erect shoring or temporary sheeting along the wall in accordance with its reservation of that work under the contract. There seems little doubt the shoring erected by the Fuller Company was inadequate to support the southern embankment. Indeed, it is admitted the sole purpose of such shoring was to protect men working in the caissons from being struck by dirt and gravel, which might become loosened. However, it clearly appears from the evidence that within the five or six days following the completion of the excavation and before the accident occurred, the general contractor had ample time within which adequately to shore the embankment on the south.

This suit was brought by the wife to recover for herself and on behalf of her minor children damages for the death of the husband. At the close of the testimony the trial judge directed a verdict for defendant upon the ground that when the excavation at the south bank was completed and the work taken over by the general contractor, the defendant's liability with respect to the work was ended. The court below further held that the failure to shore as the excavation work progressed was not the proximate cause of the accident, but the cave-in of the bank was due to the negligence of the general contractor in failing to shore the wall promptly and properly after the excavation work was completed, and in

permitting plaintiff and other workmen to assume places of danger in proximity thereto before the embankment had been made safe by proper shoring. The plaintiff's motion for new trial was refused and judgment entered upon the verdict in favor of defendant, from which plaintiff has taken this appeal.

The question before us is whether there is sufficient evidence to support a finding that decedent met his death as the result of negligence on the part of defendant.

Plaintiff's position is that the dangerous condition of the work had been created by defendant, and since it was not corrected or made safe prior to the time it caused injury to third persons, defendant is concurrently liable with the general contractor, and its responsibility is not shifted by the undertaking of the general contractor to do the shoring. The plaintiff calls attention to the decision of this Court in *Bisson v. John B. Kelly, Inc.,* 314 Pa. 99. In that case the defendant, a subcontractor, had completed the construction of a special type of wall in a building. Although the wall was finished so far as the subcontractor was concerned, additional work remained to be performed by another contractor before the wall became a part of and was "tied in" with the remainder of the building. The defendant subcontractor was held liable to the employee of another subcontractor, who was injured by a tile which became dislodged and fell from the wall four days after the completion of the work, at a time when defendant had left the job. This decision was founded upon the principle that one who creates a dangerous condition is bound to anticipate as a reasonably prudent person, that others will be injured by this condition, and is under a duty so far as is possible to take measures to make the condition safe.

Our decision in *Bisson v. Kelly,* supra, is inapplicable to the present situation. In that case the defendant not only knew the wall was in an unsafe condition, and that third persons were liable to receive injuries by tile falling therefrom, but was also aware that a certain

period of time must elapse before it would be possible to do the work necessary to render the wall safe. It was during the period when no person was in control of the wall that the accident occurred. The facts here are clearly distinguishable. The defendant did not leave the location unattended and unguarded, but relinquished control only when the Fuller Company was in a position to take over and carry on the work of shoring the wall.

Assuming arguendo that a duty rested upon this defendant to make safe a dangerous condition which it had created, that responsibility ended when the defendant transferred control and possession of the south wall of the excavation to the Fuller Company. When the defendant saw the work of shoring begun it could properly assume that the general contractor would erect adequate shoring before it permitted men to work beneath and adjacent to this wall. Certainly it is clear that defendant's duty, if any such there was under the circumstances, to remedy the dangerous condition it had created, was thereupon ended.

In *Jones v. McNichol Paving & Cons. Co.*, 317 Pa. 246, a fellow worker of the decedent in the present case was injured by the same slide of earth, and brought suit against this defendant. We there affirmed a judgment for defendant upon the opinion of Mr. Justice STERN, then sitting in Common Pleas court. That case, of course, is not determinative of the present case, as the actions are separate and the evidence produced in each case is different. The principle of law upon which the trial court entered judgment for defendant is, however, controlling in the instant case. Mr. Justice STERN there said (p. 251): "It is true that the shoring done by the general contractor proved to be inadequate and was designed to protect the men working in the caissons from the falling upon them of loose dirt and pebbles rather than to prevent the bank itself from caving in. This, however, was a matter of poor judgment or of negligence on the part of the general contractor. The latter real-

ized that under its contract with the defendant it had to do whatever shoring work was necessary, and when the excavation work was done it took charge of the situation and did what shoring it thought was sufficient. If, by reason of the inadequacy of this work, an accident occurred, the responsibility should not rest upon the defendant, which had not only completed its own job of excavating the bank, but had seen the general contractor thereupon take up the work of shoring. . . . If, under such circumstances, the defendant were to be held liable, it would amount to fastening responsibility upon it not only for its own part of the general work of construction and not only (as in the case of *Bisson v. Kelly*) for seeing to it that some other party should appear and at least begin the work designed to make the structure safe, but also that this other party should perform the necessary additional work adequately and without negligence."

In the light of our decision in *Jones v. McNichol Co.,* supra, the learned trial judge here had no choice but to direct a verdict for the defendant, and in our opinion the defendant breached no duty it owed to this decedent. The unfortunate accident occurred not while defendant was excavating, but eight days thereafter. The proximate and sole cause of the accident was insufficient and inadequate shoring. The duty to shore the southern embankment was upon the general contractor and not upon this defendant. As we have pointed out, defendant's liability ended when the general contractor took over the work and proceeded to put in shoring as it had agreed to do. Thereafter defendant could properly rely upon the fact that the general contractor would do all that was necessary under the circumstances. As long as the general contractor remained in control, defendant could not interfere, nor can defendant now be held liable for the general contractor's failure to perform its assumed duties.

The judgment is affirmed.