(No. 34472.—

DOROTHY GARRETT, Appellant, *vs.* NATIONAL TEA Co., Appellee.

*Opinion filed January 24, 1958.*

568

WILLIAMS & LEONARD, of Chicago, (JOHN L. ROACH, of counsel,) for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, (DAVID JACKER, THOMAS D. ALLEN, and JOHN J. EDMAN, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Plaintiff, Dorothy Garrett, recovered a judgment for $2,500 in the municipal court of Chicago, against defendant, National Tea Company, in an action for damages resulting from personal injuries. Trial was by jury. On appeal by defendant the Appellate Court, First District, found as a matter of law that plaintiff failed to prove defendant was negligent and, therefore, reversed the judgment with directions to enter judgment for defendant and against the plaintiff. (13 Ill. App.2d 252.) The case is here upon our order granting plaintiff's petition for leave to appeal from the judgment of the Appellate Court.

The only issue presented by the record and the briefs of the parties for us to determine is whether the conclusion reached by the Appellate Court is correct, as no point is raised or made by defendant as to plaintiff's pleadings,

due care, her injuries or the amount of her recovery. To determine this issue a review of the evidence is required.

Plaintiff sustained her injuries while on the way out of defendant's supermarket located on the southwest corner of Fifty-third and Halsted streets, in Chicago. She had completed her shopping, paid for her purchases at a check-out counter, picked up the large bag of groceries, which reached from her waist to her eyes, and holding it in front of her walked toward the exit door of the store. As she walked through the exit turnstile by the door she tripped over a sealed box on the floor which she did not see until after she had fallen. The box was about 10 inches high, 15 inches wide and 18 inches long. She thought it contained canned goods but could not be absolutely sure. Her left foot struck the box and she fell over but not completely, as she supported herself on her elbows. She got up, tried to push the box out of her way with her right foot but could not. She fell again but again supported herself so that she did not fall all the way to the floor. She then stepped over the box and left the store. She testified one of the girls at the check-out counter called out "what happened" at the time she fell. Her husband was waiting for her at the door where his car was parked. She reported the occurrence to him, he put the groceries in the car and she went back to the store. She asked the girl who checked her out for her name but the girl would not give it to her. Plaintiff testified this was the same girl who had called out "what happened" when plaintiff fell. When plaintiff told her she had fallen over a box in the aisle, then the girl said to her, "Oh, I didn't see anything." This girl turned out to be Loraine Temple. Upon the trial of this cause she appeared as a witness for defendant and admitted she was the girl who checked the plaintiff out but denied she had said to plaintiff "I didn't see anything," or had called out "what happened?" Plaintiff and her husband then went home, left the groceries and returned to the

store to report the accident. She went in with her husband. She noticed the box had been removed and that it now was against the wall. She pointed it out to her husband.

The accident occurred on Tuesday, January 18, 1955, between a quarter to one and one o'clock. She was in the store long enough to pick out a cart, wheel it through the shopping area of the store, select her purchases, and wheel the cart back to the check-out counters, where her purchases were checked, paid for by her and then placed in a large paper bag. From there she went down the exit aisle to the turnstile, a distance of about fifteen feet, where the accident occurred.

Plaintiff called Blanche Hill, an employee of defendant, as a witness on her behalf under section 60 of rule 1 of the municipal court. She testified she was defendant's bookkeeper, assistant manager and in charge of the check-out girls; that on the day in question she worked as a check-out girl between the hour of 11:30 A.M. and 12:30 P.M. and then went to lunch. As to that part of the premises where the accident occurred she and other witnesses testified, in substance, that the store was so designed that both the manager and assistant manager-cashier overlooked the aisle down which plaintiff had walked and that in addition the checkers at the check-out counters faced the aisle while working. She further testified that, "There is no barrier between the entrance, where the people come in and the people go out. There is a wide aisle that is the front part of the store. A bin is located on the east side by the window at the front part of the store where we store empty cartons and check-out counters are on the west side. The empty boxes are used to pack groceries for people who come in and get large orders. You can't put them in packages. People come in cars that prefer to have them in cartons because there is less chance of them tipping over. Then we have delivery service. Groceries are put in the truck. Naturally, if you put fifty or sixty bags in there

you are likely to have mass packing in those conditions, and that is why those cartons are safe for that. The aisle between where these cartons are stored and the check-out counter is ten or twelve feet. That nothing is ever permitted to be stored in that aisle. No full boxes have ever slipped over on the aisle there. Empty boxes or cartons have fallen off the bin but these we pick up within a few minutes after it would happen. Like if a girl goes for a box and she is looking for the proper size, she might pick one from the bottom and one of the others might fall on the floor. Our practice is to pick up that box immediately. If I am in the office, I would see the box lying there, I can go pick it up. The girls might miss one in the aisle if the store is rushed, but if we are not busy they wouldn't make a practice of that."

Mrs. Hill testified further that her office, which is also the manager's office, overlooks this aisle, "I can observe everything that goes on in this aisle. On this date nobody was watching that aisle; the manager wasn't working. It was his day off. Two girls were checking when I was out to lunch." She testified that on occasions there would be boxes containing grocery orders stored on a ledge on the window at the west end of the store, right at the front entrance of the store. "Other than that, where those boxes are stored and the check-out counter, that aisle isn't used for storing boxes. * * * I have seen those boxes (filled at the check-out counter) momentarily stored on the floor on this aisle which overlooks my office on Friday or Saturday. As for any other days of the week that I could recall, we don't have enough orders for that." She testified further that: "All deliveries are not made in the back of the store, stock is brought into the store in the front."

At the time of the accident it appears that only two checkers were at work, one was Loraine Temple, and the other was Helmi Cotter. Both were called as witnesses on behalf of defendant. The last named testified that they

were not then busy at the counters and they were engaged in conversation with each other and in order for her to talk to Loraine, Helmi would have to turn her back on the aisle.

From the foregoing recitation of the facts and circumstances in evidence, most of which is omitted from the opinion of the Appellate Court, we believe the jury could have drawn a number of inferences each of which tended to support the verdict.

The jury by its verdict in effect found the box was in the aisle as testified to by plaintiff. It was not there when she entered the store, but was there when she was leaving. In the interim plaintiff was in the store long enough to select a cart, wheel it about through the shopping area selecting her purchases, be checked out and pay for her groceries and walk toward the exit, where she fell over the box. The jury, from the facts and circumstances in evidence, could have found and, in effect did find that the box was in the aisle long enough to charge the defendant with constructive knowledge that the box was there. There is no arbitrary rule as to the length of time an obstruction must be on the floor before constructive knowledge will be presumed. There was evidence that on occasions, boxes such as the one in question were stored or left in the aisle by defendant; that the premises were so designed that the aisle was in full view from the manager's office and of the five girls at the check-out counters; that it was possible for these employees or any one of them to discover the box in the aisle in a second, without any effort if they looked down the aisle, instead of being engaged in conversation distracting them from the exercise of ordinary care to keep the aisle free of obstructions which duty defendant, through its agents and servants in that behalf, owed the plaintiff. The jury may have found from the foregoing facts and circumstances that had defendant's employees looked down the aisle with reasonable frequency they would have seen the box and that their failure to so look and discover the

box was actionable negligence. Again under the facts and circumstances in evidence the jury may have concluded that defendant had actual knowledge that the box was in the aisle.

Also from the fact that the box was sealed, was heavy and contained what plaintiff thought was canned goods, and was left standing in the aisle, on the premises of defendant and in its possession, the jury may have found and concluded that the box was placed there by defendant and, if so, this was actionable negligence.

While, of course, the law does not make the owner of the premises the insurer of persons invited thereon, still such owner does owe to his invitees the duty to exercise ordinary care to keep the premises in a reasonably safe condition. (*Milauskis* v. *Terminal Railroad Association of St. Louis,* 286 Ill. 547.) Whether, under the facts and circumstances in evidence, defendant discharged that duty to plaintiff was a question of fact for the jury to decide. (*Bonnier* v. *Chicago, Burlington & Quincy Railroad Co.* 2 Ill.2d 606.) The evidence indicated that on Fridays and Saturdays defendant's store was much busier than on Tuesdays, the day on which the accident occurred. There was, therefore, a better opportunity for defendant's employees to exercise ordinary care to discover and remove the obstruction in question. It is conceivable that in the discharge of its duty to plaintiff and its other patrons the jury may have felt that defendant ought to have kept a better watch of the aisle than it did in order to prevent the accident and avoid injury to plaintiff, and that its failure in that behalf was negligence.

We conclude, after considering all the evidence in this cause together with all reasonable inferences drawn therefrom in its aspect most favorable to plaintiff, that plaintiff, as the municipal court found, had a submissible case for the jury (*Starck* v. *Chicago and North Western Railway Co.* 4 Ill.2d 611), and therefore the Appellate Court erred

when it reversed the judgment of the municipal court of Chicago with directions to enter judgment for defendant.

Accordingly, the judgment of the Appellate Court for the First District is reversed and the judgment of the municipal court of Chicago is affirmed.

*Appellate Court reversed; municipal court affirmed.*