Paul R. Rodgers, Plaintiff-Appellant, v. Meyers and Smith, Inc., a Corporation, and Wm. J. Magill, d/b/a Magill Plumbing and Heating Company, Defendants-Appellees.

Gen. No. 49,775.

First District, First Division.

March 15, 1965.

Michael H. Postilion, of Chicago (Fitzpatrick, Postilion, Zegiel & Heinemann and Arthur W. Sprague, of counsel), for appellant.

Levin & Upton, of Chicago (Roland C. Upton and Henry H. Caldwell, of counsel), for Wm. J. Magill, appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an action for personal injuries received by plaintiff when the cover of a newly raised and reset sewer tipped as plaintiff walked over it. The defendants are the subcontractor, William J. Magill, and the general contractor, Meyers and Smith, Inc. The jury returned a $7,000 verdict against both defendants. The trial court entered judgments in favor of both defendants, notwithstanding the verdict. Plaintiff appeals.

██ The sole question is whether it was error for the trial court to grant defendants' motions for judgment notwithstanding the verdict. If there is any evidence in the record which, standing alone and taken with all its intendments most favorable to plaintiff, tends to prove the material elements of plaintiff's case, the motions should have been denied. Only when there is a complete absence of probative facts to support the conclusion drawn by the jury is it proper to grant a motion for judgment notwithstanding the verdict. Lindroth v. Walgreen Co., 407 Ill 121, 130 136, 94 NE2d 847 (1950).

██ A review of the trial court's disposition of such a motion requires a consideration of all the evidence

but precludes any examination of its weight in order to determine its preponderance or the credibility of witnesses. Weinstein v. Metropolitan Life Ins. Co., 389 Ill 571, 576, 60 NE2d 207 (1945); Cardona v. Toczydlowski, 35 Ill App2d 11, 16, 180 NE2d 709 (1962).

There is no substantial dispute as to the evidence. On the date of the occurrence, August 30, 1956, plaintiff, Paul R. Rodgers, was a 31-year-old business manager of School District 102 in LaGrange, Illinois. Prior to that date, defendant Meyers and Smith, Inc., had been employed by the school district to raise the level and repave the playground area of the Ogden Avenue Elementary School. In the playground there were three known sewers and a new one was to be built. The work of raising and resetting the three sewers and building the fourth sewer was subcontracted by Meyers and Smith, Inc., to defendant, William J. Magill, d/b/a Magill Plumbing and Heating Company.

After the work had commenced, and approximately two or three days before August 30, 1956, a fifth sewer, which had been buried for about 46 years, was discovered when a Meyers and Smith bulldozer ran into it. The blade of the bulldozer knocked the 350 pound cover assembly of the sewer off the masonry work which formed the walls of the cistern or well. The cover assembly, which consisted of a metal ring with a lip or ledge on its interior circumference, on which the metal lid rested, had been submerged about 18 inches below the old level of the playground. It had been covered with cinders and black top. The lid was crusted over with dirt and corrosion.

Ernest Meyers telephoned William E. Rose, the landscape architect, who had prepared the plans and specifications for the regrading and paving of the playground area, and Rose, together with Meyers, went to the playground and "looked at" the sewer. Be-

cause of the existence of water in the well, they telephoned plaintiff and recommended that the sewer be raised. Plaintiff told Rose, "If it is wise in your opinion to raise it, then raise it." Meyers and Smith ordered the subcontractor, Magill, to raise the sewer and reset it at the new grade.

Magill completed the work of resetting the buried sewer on the same day that it was discovered, using the same cover assembly. Magill used a hammer to dislodge some of the dirt from the lid, and reset it in the frame. He did not test it to see if it would "tipple" inside the frame. Two or three days later, while walking from the garage to the school building, plaintiff stepped on the right side of the lid with his right foot, and the lid tilted. He straddled the upturned lid, coming down with his full weight on the edge of the lid, suffering intense pain. The effects of the injury sustained persisted for a number of years. After plaintiff was injured, Mr. Meyers and Dr. James Pease, the Superintendent of Schools, each tested the lid and found that it did not fit the frame but tilted on slight pressure.

There appears to be no issue about the medical testimony. Plaintiff's injuries included his back and scrotum areas, and secondary prostatitis developed. The record contains the testimony of the treating physician, who described in detail his objective findings and treatment.

In support of the judgment notwithstanding the verdict, defendant Magill contends that (1) the occurrence of an injury does not justify an inference of negligence; (2) in order to support a verdict, plaintiff must have offered proof, either direct or circumstantial, of the negligence of the defendant; (3) a contractor is not liable to a third person for injury unless the article installed is inherently dangerous or inherently defective; and (4) the filing of the amendment to plain-

204

tiff's complaint is, in contemplation of law, an abandonment of the complaint.

Defendant Meyers and Smith, Inc., contends (1) the evidence in this case fails to establish any duty on it to test the sewer cover assembly; (2) the evidence in this case fails to establish the violation of any duty on its part; and (3) if there is any negligence on its part, then, as a matter of law, there is contributory negligence on the part of the plaintiff.

Ernest Meyers, called as a witness for plaintiff under section 60 of the Civil Practice Act (Ill Rev Stats 1963, c 110), testified, in substance: "I was at the site when the bulldozer ran into that sewer lid while it was ripping off the old layer of blacktop. I came over immediately afterwards. . . . In my inspection I did not test the manhole cover to see whether it would bear pedestrian traffic. It is not necessary to make such a test. We have raised a lot of manhole covers, and you never walk across them to see if they are going to tiddlywink. I have had a lot of experience in raising manholes. After this accident to Mr. Rodgers, I did test the manhole cover, and it did tiddlywink. When I tested it, if you put some weight near one of the edges, it would slip through past the lid that it's supposed to rest on. That lid was too narrow to fit properly into that frame. This defect was not observable to the naked eye, or to a person walking along in the playground area. The only way you would find out would be if you would put some weight on it. This particular manhole cover is what is ordinarily referred to as a light-duty cover. . . . I had the obligation to see to it that the plumbing work and the work of raising these sewers to grade was done properly, and in turn Mr. Rose did. I have been in construction work practically all of my life. . . . I did not examine the old cover for defects before I decided to use it. I simply hit it with the bulldozer, and took it out of the

205

ground; then, without further inspection of the frame and lid, put it back on the raised well. I did inspect it to see that it wasn't split down the middle, and that it wouldn't disintegrate if I touched it. . . . The first time I tested the lid to see if it would bear pedestrian traffic was after I learned about Mr. Rodgers being hurt."

Defendant Magill, also called by plaintiff under section 60 of the Civil Practice Act, testified: "I have had experience in raising manholes before. I had been in the plumbing business for four years before 1956, and had worked as a plumber since 1939. . . . I inspected this manhole before the work started, and after the work was completed. I am talking about the manhole that had been buried. It did not have a shiny or brand-new cover. The cover had dirt and corrosion on it, and was crusted. We did not sweep it clean. When we put it back on the manhole, we hammer off as much as we can and replace it. We never scraped it clean. . . . In my inspection before the accident, I did not test to see if the lid would tipple. I never inspected it to see whether or not the cover would tipple inside the frame. I didn't stand on it to test it, because in the construction stages you are liable to disrupt the brick work and loosen all the mortar joints and everything else. . . . The cover that is on there now is a little larger than the one that was on at the time this happened. . . . When I say larger, I mean that the thickness of the new cover is greater than that of the old one. It is a heavier duty cover now. . . ."

Mr. Rose was called as a witness on behalf of defendant Meyers and Smith and, on cross-examination, testified: "I made only a casual inspection of the sewer frame and lid at that time [when Mr. Meyers called him to the playground]. That was just a visual inspection. There was no noticeable defect at that

206

time. . . . We just assumed it was all right and ordered it raised . . . . As a matter of fact, I did not examine this assembly from the time it was first discovered until after Mr. Rodgers' accident. We did not make an inspection or examination between the time of installation and the time of the accident. . . . The inspection that was made by me and by Mr. Meyers was a casual, visual inspection."

■ In Illinois, "it is necessary, in an action to recover damages for personal injuries, to allege and prove the existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains, the failure of the defendant to perform that duty, and the resulting injury to the plaintiff." (Lasko v. Meier, 394 Ill 71, 75, 76, 67 NE2d 162 (1946).) We find evidence in this record "which, standing alone and taken with all its intendments most favorable to plaintiff, tends to prove the material elements of plaintiff's case."

■ We believe both defendants had "a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence" of their actions. (Kahn v. James Burton Co., 5 Ill2d 614, 622, 126 NE2d 836 (1955).) The nature of the duty of the defendants here is fairly stated in Colbert v. Holland Furnace Co., 333 Ill 78, 81, 164 NE 162 (1928) :

" . . . [O]ne who supplies a thing for such use by others that it is obvious that any defect will be likely to result in injury to those so using it is liable to any person who, using it properly for the purpose for which it is supplied, is injured by its defective condition. . . . [H]e who furnishes a thing for a certain use by others invites others to use it, and is therefore bound to make it safe for such purpose."

207

It is argued that the installation of the sewer cover assembly had been accepted by architect Rose, and that "when the work is finished by the contractor and accepted by the employer, the latter is substituted as the party responsible for existing defects, and the same rule is applied to subcontractors. . . ." 27 Am Jur 534.

 This rule should not be applied here, because "every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong. The duty to exercise ordinary care to avoid injury to another does not depend upon contract, privity of interest, or the proximity of relationship, but extends to remote and unknown persons." Kahn v. James Burton Co., 5 Ill2d 614, 622, 126 NE2d 836 (1955).

 We agree that the mere fact that plaintiff was injured does not authorize a presumption or inference that the sewer assembly was negligently installed. However, there is evidence in the record from which a jury might, and evidently did, reasonably conclude that the defendants failed to exercise ordinary care in not determining whether the old sewer cover might tilt when walked upon, and that defendants should have reasonably foreseen that if the sewer cover did not properly fit the frame, someone, by stepping on it while walking across the playground, could cause it to tilt, and be injured. Both defendants were experienced in the installation of sewer assemblies. They both were aware, or should have been aware, that the area in which the sewer was located would be subject to considerable pedestrian traffic. The old sewer cover had been buried for a great many years, was corroded, had been knocked off the walls of the well by the blade of a bulldozer, and was of a

"light-duty" type. A determination of whether the cover fit properly required only a minimal effort beyond the "casual, visual inspection" made. Both Meyers and Dr. Pease, immediately after the occurrence, found that the lid tilted on slight pressure, and defendant Meyers admitted that the lid was "too narrow to fit properly into that frame."

We find nothing in the record to show that plaintiff was guilty of contributory negligence. He was informed over the telephone by the landscape architect, Rose, and by Meyers, an experienced contractor, that the sewer should be raised. He told Rose, "if it is wise in your opinion to raise it, then raise it." He relied on expert advice on a technical matter. The first time plaintiff saw the cover was when he stepped on it while walking across the playground. He was using it for a purpose for which it was intended. There is nothing in the record to show that he failed to use ordinary care either in consenting to the sewer being raised or in walking over it.

Defendant Magill also contends that the filing of an amendment to plaintiff's complaint, during the course of the trial, was intended to supersede the complaint and amounted to an abandonment of the complaint. The amendment added an additional paragraph [6A], to be inserted between paragraphs 6 and 7 of the complaint. The amendment is prefaced with the words, "Leave of Court first having been granted, plaintiff files this his Amendment to Complaint." After the identification of "6A," it commences with the words, "At the time and place aforesaid, . . . ," and alleges specific acts of negligence in the installation of the manhole cover assembly. It is obvious that the pleading was intended to be as it is entitled, an "Amendment to Complaint."

We conclude, after an examination of this record, that it was improper for the trial court to grant defend-

ants' motions for judgment notwithstanding the verdict and, therefore, the judgments for defendants are reversed and the cause is remanded to the Circuit Court with instructions to reinstate the judgment on the verdict for plaintiff.

Reversed and remanded with directions.

BURMAN, P. J. and KLUCZYNSKI, J., concur.