ALICE McDONALD, Plaintiff-Appellee, *v.* FRONTIER LANES, INC., *et al.*, Defendants-Appellants.

(No. 70-91;

Second District—July 30, 1971.

Carbary, Carbary & Chapski, of Elgin, and Alschuler, Putnam, Mc-Wethy, Weiss & Weiler, of Aurora, for appellant.

Horwitz, Anesi, Ozman & Associates, of Chicago, Smith & McCracken, of Geneva, and Dario A. Garibaldi, of Flossmoor, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendants, Frontier Lanes, Inc. and Northern Illinois Gas Company, appeal from judgments entered against them upon jury verdicts in favor of plaintiff, Alice McDonald. Plaintiff brings a separate appeal from the judgment entered upon the verdict in favor of defendant, Tony Ceresa.

Plaintiff was injured when she stepped into a hole in a parkway owned by the City of Elgin located across a public sidewalk from the parking lot maintained by Frontier for its tavern and bowling patrons. (The city was a defendant at trial and after verdict against it the court entered judgment *n.o.v.* from which no appeal has been taken.)

Frontier and Northern Illinois both urge on appeal that the trial court should have directed verdicts in their favor or entered judgments *n.o.v.* and, in the alternative, new trials should be granted because the verdicts are against the manifest weight of the evidence. In addition, Frontier alleges error in the rulings of the trial court on two instructions and in not allowing it to file a counterclaim against Northern Illinois during trial. Plaintiff in her separate appeal contends defendant, Ceresa, is personally liable for her damages by reason of this status as a corporate officer of Frontier and as owner of the land it occupied.

There is little conflict in the evidence. In early 1965, Ceresa subdivided land owned by him in the City of Elgin improving it with a paved street named Ceresa Drive, running in north-south directions, and with a sidewalk along the east side of the street. Between the sidewalk and curb was a six-foot wide parkway which he graded, seeded and planted with small trees and which, together with the street and sidewalk improvements, was dedicated to and accepted by the city at

that time. In late 1965, Ceresa commenced construction of a tavern and bowling alley building on a 5½ acre tract of vacant land owned by him on the east side of Ceresa Drive. He did some of the work himself and let portions to plumbling, heating, paving and other contractors who also worked on the premises.

On January 21, 1966, Ceresa requested Northern Illinois to provide gas service for heating the building and it sent to the premises a four man crew to install a gas line from its main in the parkway to the building. The ground was frozen and covered with snow. The building was still under construction with various kinds of building material piled between it and the sidewalk west of the building. The gas crew noticed several mounds of dirt piled at intervals along the parkway between the sidewalk and the street. The Northern Illinois crew dug a trench across the parkway, under the sidewalk and sixty feet across the future parking lot to the building, on a line a few feet south of the front door of the building, and installed the gas pipe. Three members of the crew returned January 24th, completed the pipe connections, and filled in the trench with frozen earth. Northern Illinois made no charges to Ceresa for its work. Ceresa observed the work and testified that after filling the trench there remained a three-inch depression in the parkway while Northern Illinois employees testified they mounded the earth one to two feet above the sidewalk level over the hole dug in the parkway. The gas crew leader also testified that from nine to eighteen inches of settling could be expected in a trench of that size. The testimony is that neither Ceresa, Frontier or Northern Illinois did any further work or maintenance in the parkway until after plaintiff's injury, when Northern Illinois returned to fill in the settled ground at that place.

After installation of the gas line, Ceresa continued his work on the building, including the blacktopping of the area from the sidewalk to the building for a parking lot, until August, 1966, when construction was completed. At that time Ceresa formed defendant, Frontier Lanes, Inc. of which he became president and sole shareholder and, as owner, he leased the premises to the corporation which then, as tenant, opened the tavern and bowling lanes for business. Ceresa served as manager of the business and was doing so at the time of plaintiff's injury.

Before August, 1967, patrons of the business parked their cars both on the parking lot and on Ceresa Drive. There were no bumpers or fencing between the parking lot and sidewalk to prevent cars from being driven between the street and parking lot over the parkway and Ceresa observed them doing so without using the driveway towards the south end of the premises. Customers of the business also commonly parked in the street and walked to and from the front door on the west side of the

building across the parking lot, sidewalk and parkway at various places, there being no designated walk area between the door and sidewalk or street. There were floodlights 140 feet apart on the roof of the single floor building and some lights at the door. There was no other illumination of the parking lot or at the street.

On August 26, 1967, plaintiff came to the premises near midnight and after driving through the parking lot and finding it full, parked her car on Ceresa Drive south of the building and walked in across the parking lot. She looked for an acquaintance in the tavern, had one or two drinks, then left shortly before closing time by the west front door she had entered. There were cars parked in the lot both beside the building and along the street side and cars were being driven through the parking lot. Other persons were also leaving the premises walking across the parking lot towards the sidewalk and street.

Plaintiff walked westerly from the door across the lot veering south as she approached the sidewalk in order to pass between cars parked on the lot and sidewalk. On crossing the sidewalk between the parked cars she stepped onto the parkway into a hole twelve inches deep and some two feet wide extending from the sidewalk to the curb across the parkway. It was dark and the hole was obscured by grass and weeds. As she fell she grasped the fender of the car parked next to her and the injury occurred. The hole was at the place the gas pipe had been installed in the parkway. Ceresa testified he had known of a defect at that place for some time but not its extent.

We consider first Frontier's contention that it was error for the trial court to deny its motion for directed verdict and judgment *n.o.v.* because all the evidence, viewed in its aspect most favorable to plaintiff, so overwhelmingly favored this defendant that no contrary verdict based on that evidence could stand. (*Pedrick v. Peoria & Eastern R. Co.,* 37 Ill.2d 494, 229 N.E.2d 504.) In essence, Frontier urges that it owed no duty to protect plaintiff from injury at a place not within the boundaries of its premises.

▌ Frontier submits no authority contesting plaintiff's status as an invitee stating it assumes that status for purposes of argument. Under the evidence we believe this to be a correct assumption. (*Starnes v. Postawko,* 347 Ill.App. 77, 106 N.E.2d 145.) Frontier also recognizes a duty to provide reasonably safe means of ingress and egress to its invitees, but would limit its application to premises owned or controlled by it.

▌▌ As stated in *Altepeter v. Virgil State Bank,* 345 Ill.App. 585, 104 N.E.2d 334, at page 598:

"The rule is that an occupant or owner of premises owes to an

invitee a duty to use ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation, not to lead such person into a dangerous trap and to give such person adequate and timely notice and warning of latent or concealed perils which are known to the owner but not to the invitee."

Included within the rule is a similar duty to provide an invitee with reasonably safe means of ingress and egress, both within the confines of the premises owned or controlled by the inviter (*Geraghty v. Burr Oak Lanes, Inc.,* 5 Ill.2d 153, 125 N.E.2d 47; *Jones v. Granite City Steel Co.,* 104 Ill.App.2d 379, 383, 244 N.E.2d 427) and, within limitations dictated by the facts of the case, beyond the precise boundaries of such premises. (*Cooley v. Makse,* 46 Ill.App.2d 25, 196 N.E.2d 396; *Stedman v. Spiros,* 23 Ill.App.2d 59, 161 N.E.2d 590; *Thomas v. Douglas,* 1 Ill.App.2d 261, 117 N.E.2d 417; *Steinberg v. Northern Illinois Tel. Co.,* 260 Ill.App. 538; *Mauzy v. Kinzel,* 19 Ill.App. 571.

In *Cooley,* plaintiff was injured in a fall on a defective, city-owned sidewalk at a place two or three feet from defendants' tavern building. The sidewalk was the only means of ingress and egress to the building and, while defendants did not cause the defect, they had knowledge of it. The court described the rule in this language at page 30:

"We think the duty of the defendants to use due care not to negligently injure invitees upon their premises carries with it a corollary duty to get such invitees safely on or off their premises. It is abundantly clear from the pictures that injuries to invitees might reasonably have been anticipated from the condition of this walk, particularly after dark. The defendants, whether lawfully or not, had assumed the right to use, enjoy and employ the sidewalk as a necessary adjunct of their possession, control and ownership of the tavern building. The exercise of that right necessarily incubates the duty to see that it may be safely exercised by their invitees  *  *  *  the duty of the defendants in this case to their invitees extends beyond naked and precise property lines. Having prescribed the route to their invitees for ingress and egress to and from their building, it was their duty to properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition."

In *Stedman,* circumstances were considered wherein the duty of care owed to an invitee might extend beyond the premises over which the inviter had lawful possession. There defendant was lessee of a lodge in state park outside of which was a patio from which a sidewalk extended. Plaintiff was some 15 feet from the sidewalk and 50 feet from the lodge when injured as the ground gave way near a precipice where he was

standing at a place not controlled by defendant under his lease. In denying liability on these facts, the court stated, *arguendo:*

"Clearly, if the brink of the precipice were a step or two from the defendant's door, or from the stone patio to which defendant's door opened, we would have a different case than is now presented to us."

■■ We must also consider, under the facts in this case, the well-settled principle that an owner or occupier of property abutting a public sidewalk also has a duty of reasonable care to those using the sidewalk who are not their invitees where such owner or occupier has assumed the use of the sidewalk for his own purposes. (*Donovan v. Raschke,* 106 Ill.App.2d 366, 369, 246 N.E.2d 110; *King v. Swanson,* 216 Ill.App. 294; Illinois Pattern Instructions, No. 135.01.) We find no error in the trial court's denial of the motions for directed verdict or for judgment *n.o.v.*

■ Frontier next contends the verdict is against the manifest weight of the evidence thus requiring a new trial. The principles to be applied here, in absence of prejudicial trial error, are set forth in *Cochran v. Parker,* 91 Ill.App.2d 56, 60, 233 N.E.2d 443:

"A court of review can set aside a verdict as being against the manifest weight of the evidence only when it is obvious or clearly evident that the jurors have arrived at an incorrect result. [Citations.] It is for the jury alone to determine the creditability of witnesses and the weight of the evidence on controverted questions of fact. A verdict based upon conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence; that is, an opposite conclusion must be clearly evident (citations.) Manifest means clearly evident, clear, plain, indisputable. [Citations.]"

There is uncontroverted evidence in this case of the assumption of use of the sidewalk and parkway by Frontier for ingress and egress of its walking and driving patrons. There is further evidence whereby the jury could reasonably find this defendant had assumed the use and control of the public sidewalk in front of the building for its customer parking, blocking it for normal use by plaintiff and other patrons. The apparent oil stains on the sidewalk shown in photographs in evidence suggest the regular use of the sidewalk for parking purposes. It is clear there was a twelve-inch deep, obscured hole in the parkway adjacent to the sidewalk opposite defendant's door, the existence of which, if not the dimensions, was known to defendant. No issue has been raised on appeal as to the exercise of due care by plaintiff for her own safety and the evidence is she was leaving Frontier's premises by a route held out to its invitees for their use; there was no alternate route available except

to share the driveway to the south with the cars of other departing tavern customers.

We believe the duty which this defendant owed to plaintiff was to exercise the care of a prudent man to provide reasonably safe means of egress from its premises and to give its invitee adequate warning of those dangers known to defendant which were not apparent. Whether the risks imposed upon plaintiff in exercising the only means of egress made available by Frontier, including therein the consideration of its use of the sidewalk for parking, were unreasonable risks under these circumstances, and whether defendant breached its duty to plaintiff, were factual determinations for the jury. *Garrett v. National Tea Co.,* 12 Ill.2d 567, 573, 147 N.E.2d 367; *Beccue v. Rockford Park District,* 94 Ill.App.2d 179, 236 N.E.2d 105.

We find that an opposite conclusion to that of the jury is not clearly evident and, therefore, its verdict is not against the manifest weight of this evidence.

Frontier also contends there should be a new trial for error in giving plaintiff's instruction No. 23, which states:

"The owner of property abutting a public sidewalk and parkway is under a duty to exercise ordinary care not to create an unsafe condition which would interfere with the customary and regular use of the walk and parkway."

This is I.P.I. 135.01 modified by the addition of the words "and parkway." Defendant suggests there was no evidence of a defect in the sidewalk to support the principle set out in the instruction and that there is no duty imposed on an abutting owner for defects in a parkway. Defendant overlooks the evidence of the use of the sidewalk and parkway by it as an adjunct of its parking lot and as the means of egress from its premises by its patrons. For the reasons heretofore stated we believe the instruction was properly given in this case.

Frontier next urges error in the refusal of the trial court to give its tendered instruction No. 2, which would require the jury to find this defendant not guilty if Frontier did not own, occupy, maintain or control the parkway and had not affirmatively created the defect causing plaintiff's injury. The instruction is pre-emptory, argumentative in form and is not in I.P.I. It does not correctly state the law under the facts of this case, thus could not correctly state defendant's theory of defense. It was properly refused by the court.

Frontier's final contention is that the trial court erred in denying it leave to file a counterclaim against defendant, Northern Illinois, after the close of plaintiff's case. Frontier here sought to insert

in the case the issues of active-passive negligence as between it and Northern Illinois. The denial or admission of additional pleadings during trial lies within the sound discretion of the court and we find no abuse of such discretion in this instance.

We turn then to the issues as they relate to defendant, Northern Illinois, which contends that, as a matter of law, it cannot be held responsible for negligence in creating any dangerous condition remaining in the parkway after it completed its pipe installation work and that any such negligence cannot be the proximate cause of plaintiff's injury.

While it agrees it owed a duty of care to plaintiff as would any other contractor doing excavation work, Northern Illinois states it comes within the rule that where the work of an independent contractor is completed, turned over to and accepted by the owner, the contractor is not liable to third persons for damages subsequently resulting from defects in the work, citing *Watts v. Bacon & Van Buskirk Glass Co.,* 20 Ill.App.2d 164, 155 N.E.2d 333 (affirmed in 18 Ill.2d 226), and *Healey v. Heidel,* 210 Ill.App. 387.

In *Watts,* defendant glass company was a contractor employed by the owner of a building to furnish and install a glass door therein. After completion of the work and acceptance by the owner, the glass shattered injuring plaintiff who then charged defendant with negligence in the use of the glass supplied and its installation. The Appellate Court held the general rule applied and, the glass not being inherently dangerous, it was not excepted from the rule. The Supreme Court affirmed that result without mention of the rule relied upon, holding there was no evidence of defendant's negligence in either furnishing or installing the glass.

In *Healy,* defendant contractor completed and turned over to the owner a building constructed on the owner's land after which a death occurred when a window fell out. The court held that the acceptance of the building by the owner raised a presumption of his satisfaction with the work and he thereby assumed the duty to take care it was free from defects known to him or which he might discover in the exercise of reasonable care. Thus, the owner's negligence in failing to meet that duty intervened as the proximate cause of the death, removing any causal connection between the death and the fault of the contractor. It also held that the defect in the window was not inherently dangerous and not within an exception to the rule.

In further support of its position, Northern Illinois cites *Sumner v. Lambert,* 96 Ohio App. 53, 121 N.E.2d 189; *Walker v. McNichol Paving & Construction Company,* 325 Pa. 267, 189 A. 673, and *Romano v. Rossano Construction Company,* 341 Mass. 718, 171 N.E.2d 853. In each of these cases construction contracts were completed by the defendant-

contractor, turned over to the owner or contractee and thereafter injuries to plaintiffs occurred. Although there are some distinguishing features in the facts, these courts generally followed the rule relied upon by defendant here. We note that in each case from this and the other jurisdictions cited by Northern Illinois, the contractor did his work upon premises either owned or controlled by his contractee.

The court in *Paul Harris Furniture Co. v. Morse*, 10 Ill.2d 28, 40, 139 N.E.2d 275, also described and considered the rule:

"The general rule is that where an independent contractor is employed to construct or install any given work or instrumentality, and has done the same and it has been accepted by the employer and the contractor discharged, he is no longer liable to third persons for injuries received as the result of defective construction or installation. [Empire Laundry Machinery Co. vs. Brady, 164 Ill. 58.] The rule, however, is subject to certain well recognized exceptions * * *."

In *Harris*, the defendant-contractor was employed to excavate a hole in which a storage tank for liquid propane gas was to be installed. At trial defendant was found to be negligent in his excavation work and on appeal made the same argument as does Northern Illinois here. The court held the storage of propane gas was imminently dangerous and although defendant did only the excavation work he, like others participating in the installation of the tank, may be held liable for damages resulting from any negligence in the performance of his work, even after completion and acceptance.

In *Rodgers v. Meyers & Smith, Inc.*, 57 Ill.App.2d 200, 206 N.E.2d 845, defendant sub-contractor was hired by the general contractor to reset a sewer cover in a school yard. Defendant did so and turned the work over to his contractee, the general contractor, but had failed to adequately inspect his work to determine the stability of the cover. The work was also accepted by the school. In holding both the defendant and the general contractor responsible for negligence in the work and denying release from liability under the rule, the court stated:

"This rule should not be applied here, because every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong. The duty to exercise ordinary care to avoid injury to another does not depend upon contract, privity of interest, or the proximity of relationship, but extends to remote and unknown persons. Kahn vs. James Burton Co. 5 Ill.2d 614, 622, 126 N.E.2d 836."

While the principle relied upon by Northern Illinois may have

vitality under some circumstances, we find it is not applicable to the facts shown by the evidence in this case.

Here defendant, Ceresa, called upon Northern Illinois to provide gas service for heating his building and it did so by installing its gas pipe in the trench it dug across Ceresa' land, under the city-owned sidewalk and across the city-owned parkway, connecting the pipe to Northern Illinois' gas main under the parkway near the street. It is noteworthy that Northern Illinois made no charge to Ceresa for its work, providing at its own expense the labor and materials necessary to bring its gas product to the building. After installing its pipe, this defendant refilled the trench with frozen earth and left both Ceresa' and the city's premises, returning only after plaintiff's injury to further fill the trench in the parkway.

Northern Illinois asserts that its contract with Ceresa is not shown by the evidence so that there is no proof as to the extent of the work it was employed to do by Ceresa. It suggests that if such contract were in evidence it might show that Ceresa had agreed to provide for the finishing of the trench in the parkway by filling as may be necessary to keep it in a safe condition and, therefore, establish his acceptance of the work and assumption of responsibility under the general rule as an intervening and sole, proximate cause of plaintiff's injury. If such a document exists, it was, surprisingly, not produced in trial and we cannot now speculate as to either its existence or its terms. The evidence of the transaction between these defendants clearly shows there was only a request for gas service by Ceresa and the installation of the gas pipe to provide that service as described herein. The excavation work done in the city-owned parkway obviously was undertaken by Northern Illinois in order to service its customer, Ceresa, with its gas product.

No case has been shown nor has our research disclosed any wherein the general rule mentioned could have application to these facts. Northern Illinois was not employed by Ceresa as an independent contractor within the sense of the rule and there could then be no acceptance of its work and substitution of Ceresa as the party solely responsible for negligence of Northern Illinois in its work outside of Ceresa's premises in the parkway, street or any other place along the gas line which might have been worked upon by Northern Illinois in its efforts to bring gas service to the building. *Edwards v. North Shore Gas Co.*, 289 Ill.App. 32, 6 N.E.2d 489.

We find the trial court correctly denied Northern Illinois' motions for directed verdict and judgment *n.o.v.*

■ Having established that Northern Illinois was not relieved of liability as a matter of law by reason of a status as an independent

contractor, we further find the evidence to be sufficient to support the jury's conclusion Northern Illinois was guilty of negligence proximately contributing to cause plaintiff's injury.

The work on the parkway was carried out by an experienced excavation crew whose foreman anticipated the trench could settle as much as eighteen inches. No effort was made to compact the earth in the excavation, to return to inspect it or to fill it when the expected settling should occur although Northern Illinois usually did so after excavating on public property. (*Peoria, B & C Traction Co. v. O'Connor*, 149 Ill.App. 598, 601.) When plaintiff stepped into it the trench had subsided some twelve inches and was obscured by grass and weeds. We have considered the evidence that cars were sometimes driven over the parkway after Northern Illinois left its work but believe, as did the jury, that such activity could not have brought about the condition of the trench as shown in the photographs in evidence. In addition, the proximity of the trench to the public sidewalk in front of a place of business where substantial pedestrian traffic could be expected should have led Northern Illinois to foresee that some harm would result from the condition in which it left its excavation and its failure to do anything to prevent or correct its deterioration. (*Aurora Gas Light Co. v. Bishop*, 81 Ill.App. 493; *Siegler v. Counties Contracting & Construction Co.*, 203 Pa. Super, 568, 202 Atl.2d 127.) On this evidence the jury could reasonably conclude this defendant was negligent and that its negligence was a proximate cause of plaintiff's injury.

We consider next plaintiff's separate appeal against defendant, Tony Ceresa, where it is contended this defendant is personally liable for the negligence attributed to defendant, Frontier, by reason of his status both as owner-lessor of the Frontier premises and as a corporate officer of Frontier.

■ Plaintiff contends the facts in the case require application of the rule that where an owner-lessor has actual or constructive notice of a defect in leased property, existing at the time of the lease, his liability for injuries caused by the defect extends to third persons. (*Wagner v. Kepler*, 411 Ill. 368, 104 N.E.2d 231; *Cooley v. Makse, supra*.) In this case there well may have been a defect in the parkway at the time Ceresa executed the lease to Frontier, but that land was not a part of the leased premises, and the acts and omissions of Frontier, as described earlier, in its use of the leased premises, sidewalk and parkway had not then yet occurred. The evidence will not support a finding that Ceresa, by virtue of his status as owner-lessor, is liable as a matter of law for plaintiff's injury.

■ As to Ceresa's corporate capacity, the rule is that an officer of a

corporation is insulated from personal liability for negligence of the corporation unless he participated in the wrongful act or had such knowledge thereof as to give rise to liability. *Lowell Hoit & Co. v. Detig,* 320 Ill.App. 179, 183, 50 N.E.2d 602; *Miller v. Simon,* 100 Ill.App.2d 6, 241 N.E.2d 697; *Peck v. Cooper,* 112 Ill. 192.

In this case Ceresa was the president, sole shareholder and manager of Frontier. He owned and operated the business and its corporate acts or omissions could only be those participated in by him. The acts and omission of Frontier giving rise to the negligence charged in this case were not isolated incidents brought about by conduct of an employee, for example, but were a part of the general mode of operation of the corporate business under Ceresa' sole power of direction and control. We find, as a matter of law, that defendant Ceresa is personally liable for the negligence of the corporate defendant, Frontier, in this case.

The judgment insofar as it relates to defendant, Tony Ceresa, will be set aside and this cause remanded to the trial court with directions to enter judgment *n.o.v.* in favor of plaintiff and against defendant, Tony Ceresa, in the sum of the verdict in this case. In all other respects the judgments are affirmed.

Reversed in part and affirmed in part, and remanded with directions.

MORAN, P. J., and ABRAHAMSON, J., concur.